**Sara Orton DECKER, Appellant,**

v.

**Charles W. LATHAM, Jr., Appellee.**

**No. 6030.**

Court of Civil Appeals of Texas.

El Paso.

Sept. 24, 1969.

Rehearing Denied Oct. 22, 1969.

Scott, Hulse, Marshall & Feuille, Charles R. Jones, El Paso, for appellant.

Malcolm McGregor, El Paso, for appellee.

### OPINION

FRASER, Chief Justice.

As stated by the appellant, the statement and nature of this case is as follows:

This appeal involves a suit for personal injuries brought against appellant, defendant below, for personal injuries, pain and suffering, and lost earnings and earning capacity allegedly sustained by Charles W. Latham, Jr., as a result of an automobile collision which occurred January 26, 1967, at the intersection of Rosewood and East Yandell Streets in the City and County of El Paso, Texas. From a judgment of the trial court for $8,048.50, based upon a jury

verdict, the appellant gave notice of appeal, filed an original motion for new trial and an amended motion for new trial, which were overruled by the trial court. Thereafter, the appellant duly perfected her appeal to this court.

Appellant's first point deals with the court's denial of her various motions for continuance and her motion to be present and testify in her own behalf before the jury, and in her second point appellant alleges error in the court's refusal to grant a stay of proceedings until such time as adequate opportunity could be had to take the deposition of plaintiff and investigate various claims of plaintiff. However, due to the fact that we are reversing and remanding this case because of errors as presented in appellant's Points 3 and 4, we do not find it necessary to pass on the first two points.

The parties will be referred to throughout this opinion as plaintiff and defendant.

▇▇▇▇ Appellant's Points of Error Nos. 3 and 4 are as follows:

## "POINT OF ERROR NO. 3

(Germane to Assignment of Error No. 3 in the Appellant's Amended Motion for New trial.)

"The trial court erred in admitting into evidence over the objection of the defendant testimony relating to the hourly wage earning scale of an aircraft mechanic in California insofar as the same related to this case and the claims of the plaintiff of lost earning capacity in the future for the reason that such evidence was immaterial and irrelevant to this case and highly prejudicial in view of the evidence which shows that his inability to acquire employment as an aircraft mechanic was not related to the injury complained of in this case, but was due to a prior congenital defect in his low

back which was in existence prior to the time of the accident.

## "POINT OF ERROR NO. 4

"(Germane to Assignment of Error No. 4 in the Appellant's Amended Motion for New Trial.)

"The trial court erred in overruling and denying the defense's motion to set aside and strike from the evidence of record in this cause and instruct the jury to disregard all evidence and references to the hourly wage earning scale of aircraft mechanics in California inasmuch as said wage scale was not relevant nor material nor admissible in evidence to establish future lost earning capacity of this plaintiff due to the injuries asserted for a recovery in this case.

We think these points must be sustained. The record in this case reveals that subsequent to the filing of the court's order of continuance, June 3, 1968, wherein the court directed that no further continuances would be granted because of the unavailability of the defendant, the defendant then proceeded with efforts to develop the discovery in this case by filing a "Notice of Intention and Application for Commission to take the Oral Deposition" of the plaintiff, July 23, 1968, and thereafter. Although properly subpoenaed to appear for such oral deposition, plaintiff failed and refused to appear for his oral deposition, whereupon the defendant filed her motion pursuant to Rule 215a(c), Texas Rules of Civil Procedure, on August 9, 1968. As has been stated before, two days before the trial of this case, the plaintiff did appear for deposition, to-wit, Saturday, September 7, 1968 at 9:30 A.M., which was the first time plaintiff had been made available for the purpose of oral discovery deposition. It was on that day, two days before the trial, that the plaintiff first divulged to the defendant that he had made application for and accepted a job with Pan American Airlines as an aircraft mechanic in Cali-

fornia, but was subsequently refused upon a physical examination on the basis that his physical condition was not acceptable for that employment. He further contended that he had had work as a draftsman for a dollar an hour less than he would have earned if he had been accepted as an aircraft mechanic. These facts all being divulged to the defendant on Saturday before the trial on the following Monday naturally prevented the defendant from making a proper investigation as to the facts applicable thereto and the veracity of plaintiff's statement. This takes particular significance when the record reveals that plaintiff was permitted to testify, over objection, that he had made application to Pan American Airlines in Los Angeles, California as an aircraft mechanic and was accepted for employment subject only to passing a physical examination. He also testified that he did not tell them he had any back condition because he didn't think it wise to do so. He further testified that the physical included X-rays of his back and that he was eventually denied employment as an aircraft mechanic by Pan American. This series of events, taken together, presented the picture that the plaintiff had solely testified relating to the future lost earnings of $1.00 per hour because he was rejected as the result of a physical examination. He further testified and presented in evidence X-rays which were a part of the physical examination administered to him by the Pan American Airlines. We feel that he did not make any causal connection between the refusal of employment as an aircraft mechanic and the injury in question, although prejudicial and influential evidence had been adduced before the jury with reference to the difference in the pay wage scale, as stated above. The record seems to reveal that the only causal connection between his rejection as an aircraft mechanic and his disability comes from his own treating doctor, who stated on April 18, 1968, "The patient recovered satisfactorily from his injuries without any significant permanent dis-

ability attributable to the accident". This same doctor testified as follows:

"Q   Is it not a fact that there is nothing in this man's back that will show on an X-ray as an injury?

A   True."

The doctor further testified that if the plaintiff had not told the airline about any back trouble, as plaintiff testified, that they must have disallowed him on the X-ray picture alone, which showed only a congenital condition known as spondylolisthesis. Then later on we have this further quotation from the record:

"Q   So we have here Mr. McGregor introducing a series of X-rays here which absolutely show no injury whatsoever, is that correct?

A   True."

After this evidence, defendant filed her motion to set aside and instruct the jury to disregard the evidence relating to the differential between the aircraft mechanic's pay scale and the pay scale of the plaintiff's employment at the time of trial, which motion was filed September 11, 1968. The defendant took the position that the plaintiff could not acquire a position as an airline engine mechanic and qualify for such wage earning scale even assuming that he did not have the alleged injury in this case, since the only evidence showed that he was rejected on physical examination and X-rays which showed only the preexisting congenital difficulty known as spondylolisthesis, and plaintiff had admittedly not advised the airlines of any prior back trouble or injury. We think this motion should have been granted and that the court was in error in not so doing because there was no causal connection shown between the injury and plaintiff's incapacity or inability to obtain employment as an aircraft mechanic. This matter of pay differential was also forcefully argued by plaintiff's attorney to the jury. In addition, plaintiff was permitted to testify at

great length regarding his prior training as an aircraft mechanic and the hourly wage scale differential of $1.00 per hour of an aircraft mechanic and a draftsman. Defendant argues that this testimony was highly inflammatory and prejudicial and calculated to arouse sympathy in the minds of the jury, as it amounted to a diminution of earning capacity of $40.00 per week or $2,000.00 per year. We feel that the trial court should have instructed the jury to disregard such testimony on the basis of the facts stated above; to-wit, that his own doctor testified that he had recovered completely from his injury, and that the X-rays showed no injury whatever to the back, only the congenital spondylolisthesis. It has been well settled that when testimony is calculated to, and probably does, cause a rendition of an improper verdict, the case will be reversed. American Surety Co. v. Semmons, 413 S.W.2d 732 (Tex. Civ.App.1967, n. r. e.); Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682. We feel here that the jury did render an improper verdict because of the matters stated above which, in summation, show that when plaintiff applied for a job as an aircraft mechanic for Pan American Airlines, he had no injury or disability except his congenital one, which the record does not show was aggravated by the accident. Therefore, the court should have granted defendant's motion to strike, and excluded all such testimony on the wage scale and earning capacity of an aircraft mechanic in California. It is elementary and very apparent that one cannot recover damages for loss of future earning capacity when the evidence shows that the earning capacity did not exist prior to the alleged negligent act, thereby making the defendant not responsible for any alleged damages shown by loss of earning capacity in the future. As stated in Carey v. Pure Distributing Corporation, 133 Tex. 31, 124 S.W.2d 847, the evidence must show that the negligence was a proximate, and not a remote, cause of the resulting injuries, and the court states that it is incumbent on the claimant to show by evidence that such injury was a natural and probable result thereof. In 40 Tex.Jur.2d 464, "Negligence", § 17, it is stated:

"Liability for negligence must be predicated on a causal connection between the negligence alleged and the injury or damage complained of. If the injury is caused independently of and has no causal relation to the wrongful act or omission that is made the foundation of an action, then the result must be attributed to the independent cause, and the wrong-doer is relieved. The causal connection must be established beyond the point of conjecture."

Here, the only evidence that we have in this case that the plaintiff was capable of work as an aircraft mechanic was his own testimony relating to his prior military service, and such standards were not shown to be the same standards and requirements for acceptance for employment as an aircraft mechanic in the civilian aircraft industry. As heretofore stated, plaintiff's own doctor stated that his employment was disallowed on the X-ray picture alone, which shows the spondylolisthesis, the doctor basing this statement on the fact that plaintiff had not told the airlines of any back injury, and the further fact that no back injury shows up on the X-ray except the congenital spondylolisthesis. A similar case is that of Texas and Pacific Railway Company v. Nabhan, 413 S.W.2d 432 (Tex.Civ.App.1967, n. r. e.). In that case the plaintiff, who sought to recover for injuries sustained when a backing train struck the rear of her automobile, was permitted to testify in detail regarding a second hospitalization and confinement and terrible pains during that period. The evidence adduced from the doctor later reflected that such hospitalization and discomfort were caused by the flu. The trial court refused to grant appellant's motion to set aside such testimony and instruct the jury to disregard it, with the result that the Court of Civil Appeals reversed the trial court and remanded the case for a new trial, holding that such tes-

timony constituted prejudicial error where the confinement had no connection with the collision. Here, we feel that the injuries suffered by plaintiff had no connection with his rejection, as heretofore stated. We quote from the plaintiff's own doctor and orthopedic surgeon, who stated as follows:

"Mr. Latham was last seen in my office on April 17, 1967. At this time subjective and objective examinations revealed that the patient recovered satisfactorily from his injuries without any significant permanent disability attributable to the accident."

On the basis of this testimony and the other facts in evidence set forth above, we repeat that we feel it was error for the trial court to refuse to strike the testimony regarding the wage differential.

■ Further, in Special Issue No. 8, the court lumped together the elements of past physical pain and mental anguish and future physical pain and mental anguish, loss of earning in the past, and future earnings. Of course it is impossible to tell from the jury's verdict how much the jury assessed for each item or element of damages, or to single out what the jury considered to be an appropriate award for any of the elements contained in said issue. This makes it impossible for the reviewing court to apportion amounts of judgments to various elements that the jury was instructed to consider, and therefore it becomes necessary to reverse the judgment of the trial court. Rubner v. Kennedy, 417 S.W.2d 860 (Tex. Civ.App.1967, n. r. e.). In that case, the court very lucidly sets out the inability of the appellate court to apportion various amounts of the judgment. This type of verdict, of course, substantially prevents the appellate court from requiring a remittitur, because the appellate court does not know what part of the verdict was awarded for any particular element. Therefore,

we feel that appellant's Points 3 and 4 must be sustained.

Appellant's Points 3 and 4 are sustained, and the case is reversed and remanded for a new trial.