CEILING FAN WAREHOUSE INC.
# 3, Appellant,

v.

John D. MORGAN, Appellee.

No. 01–86–0141–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 26, 1986.

Rehearing Denied Dec. 31, 1986.

David E. Lueders, Houston, for appellant.

Kevin Dubose, Joe K. Mitchell, Mitchell & Mitchell, R.G. Shivers, Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

HOYT, Justice.

This suit arises out of personal injuries sustained by appellee, John D. Morgan, when a lava rock display board in the store operated by appellant, Ceiling Fan Warehouse, Inc. #3, ("Ceiling Fan"), fell on Morgan, injuring his left heel.

The case was tried to a jury and the jury answered the special issues as follows: (1) that the display board presented an unreasonable risk of harm to Morgan; (2) that Ceiling Fan knew or should have known of the condition of the display; (3) that Ceiling Fan was negligent in failing to correct the condition; (4) that Ceiling Fan's failure to correct the condition was a proximate cause of Morgan's injuries; (5) that Ceiling Fan failed to warn Morgan of the condition of the display; (6) that Ceiling Fan was negligent in failing to warn; (7) that Ceiling Fan's failure to warn was a proximate cause of Morgan's injuries; (8) that the display board fell because Morgan pulled it away from the wall; and (9) that Morgan's conduct did not constitute negligence.

In answer to Special Issue No. 12 on damages, the jury awarded $5,000 for past physical pain and mental anguish; $1,500 for past loss of earnings; $10,000 for loss of earning capacity in the future; $5,000 for past medical expenses; and $5,000 for future medical expenses.

The trial court disregarded the jury's finding as to the $5,000 damages for future expenses, reduced the jury award for past medical expenses from $5,000 to $2,300, and entered judgment for the damages found by the jury consisting of $5,000 for past physical pain and mental anguish, $1,500 for loss of earnings in the past, and $10,000 for loss of earning capacity that, in reasonable probability, Morgan will sustain in the future.

In points of error five through eight, Ceiling Fan maintains that the evidence is insufficient or against the great weight and preponderance of the evidence to support the jury's finding that: (1) the display board presented an unreasonable risk of harm to Morgan; (2) its failure to correct the condition was negligence and a proximate cause of the incident and Morgan's injuries; and (3) Morgan's action in pulling the display board away from the wall was not negligence.

In a "factual insufficiency point," this Court is required to review all the evidence, including any evidence contrary to the finding of the court, and decide whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Pfeffer v. Southern Texas Laborers' Pension Trust Fund*, 679 S.W.2d 691, 694 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Ceiling Fan's argument on the above points appears to be based on the assumption that Morgan could not pull the lava rock display board away from the wall

without that act consisting negligence. This position is not supported by the jury's verdict or the great weight and preponderance of the evidence.

The record reflects that Morgan went to the Ceiling Fan Warehouse intending to purchase three ceiling fans. Although he testified that he never touched the display board, that he had no interest in lava rock for a fireplace, and that he did not pull the display board over on himself, the jury found that he did, in fact, examine it. Implicit in the jury's finding is the finding that Morgan and others were invited by Ceiling Fan to examine all merchandise in the store and that Ceiling Fan had a duty to either warn its customers of the hazard or to secure each display in such a manner as to protect the customer who, unsuspectingly, may examine it and injure himself in the process.

In *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983), the Texas Supreme Court held:

> [W]hen an occupier has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition. The occupier is considered to have constructive knowledge of any premises defects or other dangerous conditions that a reasonably careful inspection would reveal.

*Id.* at 295.

The standard of conduct required of a premises occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under all the pertinent circumstances. An occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises' condition. *Id.* at 297.

In the instant case, evidence presented indicated that a dangerous condition existed, that Ceiling Fan knew or should have known of the hazard, and that

no action had been taken to minimize the risk of harm from that dangerous condition. Pulling the display board away from the wall to examine it was not, as a matter of law, contributory negligence. *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 521 (Tex.1978).

Points of error five through eight are overruled.

In points of error nine and ten, Ceiling Fan contends that the trial court erred in calculating prejudgment interest, on the award of $2300 for past medical expenses and, by doing so, deprived it of due process of law in violation of article 1, section 19 of the Texas Constitution. It argues this point because Morgan's injury occurred November 8, 1980, and the medical evidence related to an operation which occurred in July and August 1984; therefore, Morgan did not lose the use of the money in question until four years after the accident.

In *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), the Supreme Court of Texas ruled that in both wrongful death and personal injury cases, prejudgment interest shall begin to accrue on both pecuniary and non-pecuniary damages from a date six months after the occurrence of the incident giving rise to the cause of action at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, sec. 2 (Vernon Supp.1986).

The judgment provided for an award of prejudgment interest on both the pecuniary and non-pecuniary damages awarded, excluding the $10,000 award for loss of future earning capacity. The prejudgment interest was figured at the rate of 10% compounded daily from May 8, 1981 (six months after the date of the accident), through September 23, 1985 (the date of judgment).

We agree with Ceiling Fan's premise that *Cavnar* never intended that trial courts ignore conclusive evidence in assessing prejudgment interest. We interpret

*Cavnar* to hold that a claimant should not be forced to establish precisely when an element of damage was incurred as a basis for recovering prejudgment interest. 696 S.W.2d at 555. However, when the evidence conclusively establishes those accrual dates, as in this case, the evidence should not and cannot be ignored to the detriment of the party against whom the interest is to be assessed. Tex. Const. art. I, sec. 19. Here, the only evidence of past medical expenses established that they were incurred in June and July 1984, some four years after the injury was incurred.

■ We hold that prejudgment interest commenced on the past physical pain and mental anguish and the past loss of earnings on May 8, 1981, and continued through September 23, 1985; that prejudgment interest commenced on the past medical expenses on January 1, 1985, and continued through September 23, 1985.

Accordingly, we sustain points of error nine and ten.

Finally, we address points of error one though four together because each point challenges the jury award of $10,000 in loss of future earning capacity. Ceiling Fan contends that there is no evidence or insufficient evidence to support the award, and that the award was excessive and against the great weight and preponderance of the evidence.

The evidence shows that at the time of the accident, Morgan was 60 years old. He worked for Southern Pacific Railroad as an automobile industrial clerk and was making $90 a day, plus $15 a day for the use of his vehicle. He worked five days per week, and his job required him to drive or walk three or four miles a day on "rock, crossties, railroad rails, and a lot of high grass."

Following the accident, he returned to work but began experiencing pain in his knee, totally unrelated to the injury here in question. He had sustained an injury to his knee as a boy playing football. The knee persisted, and in 1981, he had surgery on his knee. In 1982, he retired from the railroad because "his whole leg hurt and he could not get around on it like he should have." In 1984, after being retired two years, he had surgery on his heel to remove scar tissue that had developed, causing nerve root irritations.

Morgan testified that almost everybody who worked for the railroad took part-time jobs after retirement, and that he probably could have done part-time work in the form of light carpentry or automobile restoration, but that his injury had prevented him from doing any part-time jobs, and had destroyed any desire for work because he knew he could not do it. He testified that he could not bend his knee and do yard work that he previously had done.

Morgan's physician, Dr. Ronald Baxter, testified that prior to Morgan's 1984 heel surgery, Morgan complained of burning pain and numbness around the achilles tendon, but that the condition was corrected through surgery. He stated that Morgan suffered no permanent disability, but did suffer some permanent damage to the smaller nerves in his heel. He testified that although Morgan persisted in his complaints that he still hurt, no objective finding could be performed to establish it.

When both "no evidence" and "insufficient evidence" points of error are raised, the court should rule upon the "no evidence" point first. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981). If there is probative evidence more than a scintilla, in support of the finding, the point will be overruled and the judgment will be affirmed, unless a factual insufficiency point has also been raised, and the court sustains it on the basis of a full review of the evidence. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 364 (1960); Garwood, *Insufficient Evidence on Appeal,* 30 Texas L.Rev. 803 (1952).

The question of what proof constitutes sufficient evidence to ascertain decreased earning capacity is by no means certain; thus, each case must rest and be judged upon its peculiar facts. *American Conveyor Corp. v. Irwin,* 470 S.W.2d 256, 260 (Tex.Civ.App.—Texarkana 1971, no writ).

In *Port Terminal Railroad Association v. Sims,* 671 S.W.2d 575 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r. e.), this Court held that damages resulting from a decreased earning capacity can best be shown by evidence of what the plaintiff was capable of earning before he was injured and what he was capable of earning afterwards, and the difference will indicate the damages he has sustained. Consequently, damages for loss of future earning capacity cannot be recovered when the evidence shows that no earning capacity existed prior to the injury, *Decker v. Latham,* 446 S.W.2d 113, 116 (Tex.Civ.App.—El Paso 1969 writ ref'd n.r.e.), or when the evidence is insufficient to determine that the injury suffered resulted in impairment of the claimant's ability to work. *See Fowler v. Pedlar,* 497 S.W.2d 399 (Tex.Civ. App.—Houston [1st Dist.] 1973, no writ).

In the case at bar, we have no evidence of the life expectancy of Morgan, no evidence that the impairment that Morgan claimed in any way related to the heel injury, no evidence of any permanent disability, and no evidence that his early retirement and claim of inability to work were associated with any condition other than his knee operation and the resulting inability to get around because of the knee's stiffness.

The evidence does not establish that the degenerated physical condition of Morgan's leg, the basis of his claim that he cannot work, was attributed solely to the heel injury. In fact, Morgan testified that his inability to work, or impairment, did not commence until after the knee operation in 1981. Morgan's speculation that his heel injury caused his knee problems, or aggravated a pre-existing knee problem, was not supported by the medical evidence and cannot form the basis of competent evidence that it in fact was the cause of any impairment.

In light of his doctor's testimony that the operation in 1984 repaired his heel injury, and that he suffered no permanent disability, and the lack of evidence to associate the heel injury with his inability to work, we hold that the impairment claimed as resulting from the heel injury was not established by a preponderance of the evidence.

We sustain points of error one through four.

We reform the judgment to delete the award of $10,000 for loss of future earning capacity, and to commence prejudgment interest on the $2,300 of past medical expenses on January 1, 1986.

The judgment, as reformed, is affirmed.