**BORDEN, INC. and Jim Guffey, Appellants,**

v.

**Arnold GUERRA, Appellee.**

**No. 13–92–025–CV.**

Court of Appeals of Texas, Corpus Christi.

June 30, 1993.

Rehearing Overruled Aug. 31, 1993.

---

George Almaraz, Almaraz & Canales, McAllen, Rose Marie Glazer, Terence M. Murphy, Jones, Day, Reavis & Pogue, Dallas, for appellants.

Miguel A. Saldana, Brownsville, Ernesto Gamez, Jr., Law Offices of Ernesto Gamez, Jr., Brownsville, Larry Zinn, San Antonio, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

A jury found that appellants, Jim Guffey and Borden, Inc., wrongfully discharged and defrauded appellee, Arnold Guerra. Appellants challenge the jury's finding by thirteen points of error. We affirm the wrongful discharge award and reverse the award based upon fraud.

On September 28, 1988, appellee, twenty-five years of age, fell from his delivery truck and hit his head on the pavement. At the time of this accident, appellee had delivered milk products for Borden, Inc., for one year and five months. The accident occurred at Victoria Elementary School in Brownsville, Texas, at 2:30 p.m. Appellee testified that, when he fell from the truck, a case of milk fell on top of his head while he lay in the parking lot. He estimated that he was unconscious for approximately five minutes. When he awoke, blood issued from his head "like water." He went to the school nurse, who took him to Dr. Lee Dale Jones, his family doctor. Dr. Jones described the wound as a deep abrasion on the back of appellee's scalp, three to five centimeters long. Dr. Jones did not suture appellee's wound, but he cleaned and dressed it, prescribed analgesics, and gave him a tetanus booster.

Dr. Jones testified that Jim Guffey talked by phone to his secretary and approved appellee's treatment as a work-related injury. Guffey, a named defendant in the suit below, was Borden's branch manager for the Rio Grande Valley area. He testified that he

completed an accident report for appellee on September 28, 1988, and sent it to the "profit center" in Corpus Christi for processing. The parties stipulated that Borden filed the workers' compensation claim for appellee and that appellee received compensation benefits.

Dr. Jones did not release appellee to work until October 4, 1988. Nonetheless, appellee returned to work immediately. He testified that, on the afternoon of his accident, when he returned to the Borden offices and presented Guffey with the doctor's excuse, Guffey "got mad," scoffed at his injury and the doctor's excuse, and told him to "go load your truck."

Appellee testified that, because he did not feel like working, he paid his friend, Enrique Almendariz, out of his own pocket to help him load and unload his delivery truck. Almendariz testified that appellee worked until 7:00 or 7:30 p.m. on the evening of his injury. The next day, appellee again called Almendariz for help. Almendariz testified that appellee paid him to help on his route two to three days a week for several weeks. Mario Galvan, appellee's supervisor, testified that he rode with appellee off and on for three to four months after the accident and that he never saw Almendariz. Galvan also testified that it would have been against company policy for Almendariz to ride with appellee in his delivery truck.

A memorandum written by Guffey reflects that Guffey sent Galvan with appellee on October 4, 1988, because, when Galvan told appellee that day to drive his route by himself, appellee "said he was still sick with a bad headache and began crying." Guffey testified that appellee worked October 4, 5, 6, and 7, but stopped working October 8, 1988. A payroll order written by Guffey reflects that, after October 8, 1988, appellee did not return to work and went on "lost time workman's compensation." Appellee did not return to work until November 16, 1988. During this time period, he provided work releases from doctors other than Dr. Jones, one of whom eventually approved his return to work on November 16, 1988.

Before appellee returned to work on November 16, 1988, he had never received a complaint from any customers, nor had he been documented by Borden for poor work performance. In fact, five weeks before his accident, appellee was promoted. However, after he returned to work, appellee was documented several times for poor work performance. His supervisor, Mario Galvan, testified that appellee was documented because he received five to six customer complaints. In total, appellee was documented on five days, November 19, 22, and 23, 1988, and again on January 3 and 4, 1989, for failing to keep milk supplies fresh and fully stocked. On January 4, 1989, Borden fired appellee for poor job performance.

Three of the last four complaints filed against appellee were filed by Abraham Duran on January 4, 1989, the same day appellee was fired. Duran was appellee's other supervisor. These were the first complaints that Duran had ever documented against appellee. Appellee testified that the first customer complaint against him on November 19, 1988, was not his fault because he had just returned to work and the backdated milk complained of could not have been left by him. Furthermore, the complaint was made by a woman who was a social acquaintance of Galvan.

Appellee testified that as an employee at Borden, Inc., he "felt like a slave." He stated that, in addition to his delivery duties, he had to wash Guffey's car, clean the rest rooms, and mop the offices, both before and after his accident. He said that the other drivers were not required to perform these activities.

Appellee testified that "either Galvan or Duran" told him two or three times that, if he did not file a workers' compensation claim, he would receive $25,000. Galvan testified that he overheard Duran say something about appellee getting $25,000. Duran testified that "someone" called him and said appellee might get $25,000. Duran did not know the identity of the caller, but assumed it was someone from Borden because the voice sounded familiar, and he had "talked to him before." Duran testified that he called appellee to his office about a week before he was fired to tell him about the $25,000. He also testified that he told appellee about the

money because he was "excited for him," and not because he intended to dissuade him from filing a workers' compensation claim. Appellee never received the $25,000.

■ In their first point of error, appellants argue that no evidence supports the jury's finding that appellee filed a workers' compensation claim. It is undisputed that Borden, and not appellee, filed the workers' compensation claim with Liberty Mutual. However, we do not find this fact determinative.

The two subparts to question 1 in the charge of this case inquired whether "Borden, Inc., by and through Jim Guffey" discharged appellee because he a) filed a workers' compensation claim, or b) caused a proceeding to be instituted under the Texas Workers' Compensation Act.[1] An affirmative finding by the jury on either one of the two subparts supports the trial court's judgment, because the accompanying instruction required an affirmative answer to *either a or b* to award damages. Therefore, even if there is no evidence that appellee filed a claim, as appellants argue, because appellants do not challenge the jury's finding that appellee "caused a proceeding to be instituted" under the Act, the jury's finding to question 1 is supported by the evidence. We cannot, as the reviewing court, *sua sponte* review the sufficiency of the evidence of the remaining subpart. *See* TEX.R.APP.PROC. 74(d).

Moreover, an employee who "caused a proceeding to be instituted under the Workers' Compensation Act" falls within the protection of article 8307c.[2] *See Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 115–16 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.). Notifying an employer of an injury and completing a required report of injury is enough to support a finding that an employee had "filed a claim" for workers' compensation. *Cigainero*, 799 S.W.2d at 389. "To hold otherwise would frustrate the purposes of the Act." *Id.* In *Hunt v. Van Der Horst Corp.*, 711 S.W.2d 77, 79 (Tex.App.—Dallas 1986, no writ), an employee "instituted a proceeding" under the Act, even though he had not completed an accident report, when he was injured at 2:00 p.m., told his supervisor that he was going to see a doctor because of his injury, and then received a telephone call at 3:30 p.m. informing him that he was fired. The court observed that "[t]o hold otherwise would be to reward employers who are particularly adept at anticipating and quick in firing potential workers' compensation claimants over those who are slower to retaliate." *Id.* at 80.

Article 8307c unequivocally protects injured employees who merely "caused to be instituted, in good faith, any proceeding under the Texas Workers' Compensation Act. . . ." The Act does not limit protection to employees who personally "filed a claim." An injured employee "caused a proceeding to be instituted" under the Act when, as in this case, the employee reported the injury to the employer and that employer filed a claim on

1. Question No. 1 and its accompanying definition provided in its entirety:

 Did Borden, Inc., by and through Jim Guffey in his representative capacity, discharge Arnold Guerra because he in good faith
 a. has filed a claim?
 b. has instituted or caused to be instituted a proceeding under the Texas Workers' Compensation Act?
 If you have answered a or b "YES", then answer Question No. 2; Otherwise, do not answer Question No. 2, No. 3 or No. 4, but then go to Question No. 5.
 The Texas Workers' Compensation Act provides that no person may discharge or in any other manner discriminate against an employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted in good faith, any proceeding under the Texas

 Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

2. TEX.REV.CIV.STAT.ANN., art. 8307c (Vernon Supp. 1993) provides in section 1 that:
 No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.
 The purpose of article 8307c "is to protect persons who are entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged by reason of taking steps to collect such benefits." *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied) (citing *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex.1980)).

behalf of the injured employee. To insulate an employer from liability for wrongful discharge merely because the employer "benevolently" takes action that the employee would have eventually taken anyway might enable dishonest employers with superior knowledge and resources to side-step the punitive policy considerations underlying 8307c. Appellants' first point of error is overruled.

In their second and third points of error, appellants argue that the evidence is factually and legally insufficient to support a judgment on appellee's wrongful discharge claim. Citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 403–04, 103 S.Ct. 2469, 2475–76, 76 L.Ed.2d 667 (1983), and *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977), appellants contend that the trial court erred because they had legitimate reasons for discharging appellee, and because no evidence or insufficient evidence suggests that they would have reached a different decision in the absence of a workers' compensation claim. However, this is a cause of action pursuant to the Texas Workers' Compensation Act, and is therefore governed by state case law, and not by federal case law.

■■■ Appellants also argue that an employer is entitled to exonerate itself by establishing that it would have made the same decision regardless of any claim for benefits. To maintain a successful action under article 8307c, an injured employee must establish a causal connection between the workers' compensation claim and the alleged wrongful termination. *Investment Properties Mgmt., Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.Civ.App.—El Paso 1991, no writ); *Hunt*, 711 S.W.2d at 79; *Hughes Tool Co. v. Richards*,

624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). However, the workers' compensation claim need not be the sole cause of termination. *Cigainero*, 799 S.W.2d at 390. In order to prevail, a worker need only show that the claim "contributed" to the company's decision to terminate employment. *Id.* (citing *General Elec. Co. v. Kunze*, 747 S.W.2d 826, 830 (Tex.App.—Waco 1987, writ denied); *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 560 (Tex.Civ.App.—Waco 1981, no writ)). Proof of causation may be established either by direct or circumstantial evidence and by the reasonable inferences from such evidence. *Montes*, 821 S.W.2d at 694; *Chemical Express Carriers, Inc. v. Pina*, 819 S.W.2d 585, 590 (Tex.App.—El Paso 1991, writ denied); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied).

■■■ Once the injured employee establishes the causal link between the workers' compensation claim and termination of employment, the employer has the burden of proving to the jury that it had a legitimate reason behind the discharge. *Montes*, 821 S.W.2d at 694 (citing *Richards*, 624 S.W.2d at 599). The cases in which employers exonerated themselves, cited by appellants, are distinguishable from this case. *See Douglas v. Levingston Shipbldg. Co.*, 617 S.W.2d 718, 720 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *Deford Lumber Co., Inc. v. Roys*, 615 S.W.2d 235, 236 (Tex.Civ.App.—Dallas 1981, no writ); *Swanson v. American Mfg. Co.*, 511 S.W.2d 561, 563–64 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.).[3]

---

3. In *Douglas* and *Swanson*, the employers conclusively proved that the employees had made false representations in their applications for employment which, under a specific provision in the Texas Workers' Compensation Act, bestowed upon the employers the right to discharge the employees, regardless of whether the employees had filed a claim for compensation. In *Roys*, uncontested evidence that the employer fired the employee for reasons other than filing a claim was admitted at trial. The court held that, because this evidence was uncontested, then the employee's filing a claim could not have been the *sole* cause of his termination, as the verdict specifically stated. The jury in this case was not asked whether appellee's filing a claim was the *sole* cause of his termination. Here, the charge asked the jury whether appellee was fired "because" he filed a claim (or caused one to be instituted). This question incorporates appellee's requirement to show causation, as well as the employer's burden to rebut causation. The jury was the trier of fact in this case, and so could judge the credibility of witnesses and the weight to be given their testimony. *Walter Baxter Seed Co. v. Rivera*, 677 S.W.2d 241, 244 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The jury's affirmative answer to question 1 impliedly rejects appellants' rebuttal evidence.

When reviewing a no evidence challenge, the appellate court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the jury's finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If the appellate court finds any evidence of probative force to support the challenged finding, the point of error must be overruled. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

In reviewing a factual insufficiency challenge the court of appeals must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). However, it is the jury's province, as the trier of fact, to judge the credibility of witnesses and the weight to be given their testimony. *Rivera*, 677 S.W.2d at 244. An appellate court may not interfere with the jury's resolution of conflicts in the evidence. *Id.* If the record contains conflicting evidence on an issue, the jury's verdict on such issues is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). After considering and weighing all of the evidence, the appellate court will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the result is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 179 (Tex.1986).

Appellants concede that appellee need not prove that the filing of a claim was the *sole* cause for discharge. To support their sufficiency points, appellants showed that appellee had been documented several times for poor job performance before his termination, and that appellee was not fired until three months *after* he filed the workers' compensation claim.

The record reflects, however, that appellants began documenting appellee's poor job performance only three days after appellee returned to work. Prior to the filing of the workers' compensation claim, appellee had never been documented for poor work performance. In fact, appellee had been promoted five weeks before his accident. Furthermore, appellee testified that the basis of the first complaint could not have been his fault because it related to some backdated milk that had been delivered by the person covering his shift while he was unable to work. Galvan, appellee's supervisor, covered many of appellee's shifts while he was gone, and he was socially acquainted with the store manager whose complaint was the basis of appellee's first documentation.

The evidence also showed that Guffey did not take appellee's injury seriously, that he made appellant work while injured, that appellant continued working because he was afraid of losing his job, and that Galvan or Duran told appellant he would receive $25,000 if he did not file a workers' compensation claim.

We find that the evidence is sufficient to support the jury's finding that appellants wrongfully discharged appellee. Once appellee established a causal link between his termination and filing a workers' compensation claim, it was within the province of the jury as trier of fact to reject appellants' rebuttal evidence. *Rivera*, 677 S.W.2d at 244. The jury could have inferred from the evidence that the sudden onset of documentation of appellee's allegedly poor work performance was a pretext by Borden to justify its discharge of appellee after his filing of a workers' compensation claim. After considering and weighing all of the evidence, we do not find that the evidence is so weak or the jury's findings are so against the great weight and preponderance of the evidence that the result is clearly wrong and unjust. *Cain*, 709 S.W.2d at 179. Appellants' second and third points of error are overruled.

By their next three points of error, appellants argue that, even if the jury properly found Borden liable for retaliatory discharge, the damages awards are erroneous.[4]

---

4. The trial court granted judgment on the following findings by the jury:

*Question No. 2*

What sum of money, if any, now paid in cash, would be the reasonable damages suffered by Mr. Guerra as a result of being discharged?

In their fourth point of error, appellants contend that the evidence was legally and factually insufficient to support the award of compensatory damages for past lost wages and future lost wages. With respect to the $60,000 in past lost wages and employment benefits, appellants argue that the jury failed to offset the award with appellee's earnings between the date of his termination and the date of trial.

Appellants begin the calculation of what they believe to be the proper measure of damages by multiplying appellee's "expected" monthly salary by twenty-four months, the time period suggested during closing argument by appellee's counsel. However, the charge clearly instructed the jury to determine past lost wages and employment benefits from the date of termination of employment to the date of trial. Both parties agree that the date of termination of employment was January, 1989, and that the time of trial was September, 1991. Thus, the elapsed time which forms the basis of the jurors' calculation of past lost wages and employment benefits is thirty-two months.

Appellee testified that he earned approximately $2,500 per month. Therefore, appellee's earning capacity for thirty-two months was $80,000. Appellants calculate that $14,400 represents Guerra's earnings from the time of his termination from Borden, and, consequently, that $14,400 represents the applicable offset amount. Accordingly, an appropriate jury award for lost wages and employment benefits which includes an offset of $14,400 would be $65,600. We find that the jury's award of $60,000 is not so against the great weight and preponderance of the evidence that the result is clearly wrong and unjust. *Cain,* 709 S.W.2d at 179.

With respect to the $300,000 award for future lost wages and employment benefits,

appellants argue that the jury was deprived of sufficient information from which to calculate future lost wages with reasonable certainty. Appellants contend that appellee was required to show appellee's work-life expectancy, whether he intended to work for a specified period in the future, and the present value of his lost future earnings.

 Loss of earning capacity that a party will suffer in the future is always uncertain and left largely to the jury's sound judgment and discretion. *McIver v. Gloria,* 169 S.W.2d 710, 712 (Tex.1943); *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492 (Tex.App.—Houston [14th Dist.] 1989, no writ). No general rule governs the proof required for loss of future earning capacity, except that each case is judged on its particular facts, and damages need be proved only to the degree to which they are ascertainable. *Id.* Although the amount of damages for lost earning capacity is largely within the discretion of the jury, a party should introduce evidence from which a jury may reasonably measure earning capacity prior to injury, and project his future loss. *City of Amarillo v. Langley,* 651 S.W.2d 906, 916–17 (Tex.App.—Amarillo 1983, no writ).

 However, a party need not produce testimony from an expert witness to support a claim for loss of future earning capacity. *Crown Plumbing, Inc. v. Petrozak,* 751 S.W.2d 936, 939 (Tex.App.—Houston [14th Dist.] 1988, no writ). Furthermore, proof of life expectancy is not required to recover lost future earnings. *Beverly Enter., Inc. v. Gaines,* 652 S.W.2d 600, 601–02 (Tex. App.—Waco 1983, no writ); *Ramirez,* 783 S.W.2d at 661. The jury may reach its own conclusion on life expectancy based on evidence of the injured person's age, health and physical condition prior to the injury, and the

An employee has the duty to mitigate damages by making a good faith effort to obtain an [sic] retain employment that he is qualified to perform.

In answering this question, you may consider only the element of damages listed below.

You are to consider each element of damages separately, so as not to include damages of one element in any other element.

Answer in "DOLLARS" and "CENTS", if any, or "NONE".

1. Lost wages and employment benefits in the past (between the date of discharge or discrimination and today),
Answer: <u>$60,000.00</u>
2. Lost wages and employment benefits that will in reasonable probability be incurred in the future,
Answer: <u>$300,000.00</u>
3. Mental anguish in the past,
Answer: <u>$-0-</u>

permanence of the injury. *Ramirez,* 783 S.W.2d at 661. Damages resulting from a decreased earning capacity can best be shown by evidence of the difference between the earning potential before and after the date of injury; the difference will indicate the sustained damages. *Ceiling Fan Warehouse, Inc. No. 3 v. Morgan,* 723 S.W.2d 195, 199 (Tex.App.—Houston [1st Dist.] 1986) *affirmed as modified,* 725 S.W.2d 715; *Port Terminal R. Ass'n v. Sims,* 671 S.W.2d 575, 578 (Tex.App. [1st Dist.] 1984, writ ref'd); *Southwestern Freight Lines v. McConnell,* 254 S.W.2d 422, 424 (Tex.Civ.App.—El Paso 1952, writ ref'd); *see also Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 596 (Tex. App.—Texarkana 1992, no writ).

■ In this case, the record reflects that appellee was twenty-eight years old at the time of trial and that he was physically able to perform the duties and responsibilities of the various jobs he had worked since he was discharged from Borden. The evidence showed that, before discharge, appellee's gross income was approximately $30,000 per year, excluding benefits, and that at the time of trial his gross income was $20,000 per year. With a $10,000 differential, and assuming a life expectancy of sixty-five years, appellee's future lost wages amount to $370,-000. The jury's $300,000 award for future lost wages is within this calculation of future lost wages. We hold that the jury was not deprived of sufficient information from which to calculate future lost wages with reasonable certainty. The jury's award is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 179. Appellants' fourth point of error is overruled.

Appellants complain in their fifth point of error that the trial court erred in entering judgment on the jury's award of $300,000 in future lost earnings because that award exceeded the amount requested in appellee's pleadings. Appellants attempted to complain about the variance between the award and the pleadings in three motions to the trial court. Without specifying reasons, the trial court denied all three motions.

■ Generally, a judgment for damages in excess of the amount pleaded is erroneous, even though a larger award might be warranted by the evidence. TEX.R.CIV.P. 301; *Employers Ins. of Wausau v. Schaefer,* 662 S.W.2d 414, 419 (Tex.App.—Corpus Christi 1983, no writ). Thus, a trial court cannot render judgment for an amount in excess of what a plaintiff requested in the live pleadings. *Picon Transp., Inc. v. Pomerantz,* 814 S.W.2d 489, 491 (Tex.App.—Dallas 1991, writ denied). However, any error resulting from a variance between the amount pleaded and the judgment is waived if the complaining party fails to object to the amount of the judgment. *Siegler v. Williams,* 658 S.W.2d 236, 240 (Tex.App.—Houston [1st Dist.] 1983, no writ). Furthermore, a motion for judgment notwithstanding the verdict does not preserve any error caused by a damages award in excess of the amount pleaded because a complaint of excessive damages must be contained in a motion seeking a new trial. TEX.R.CIV.P. 324(b)(4); *Pipgras v. Hart,* 832 S.W.2d 360, 367 (Tex.App.—Fort Worth 1992, writ denied).

■ Pursuant to TEX.R.APP.P. 52(a), to preserve a complaint for appellate review, a party must state the specific grounds for an objection. An objection must be made with sufficient particularity to allow the trial court to make an informed ruling and the other party to remedy the defect, if possible. *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 74 (Tex.1989) (op. on reh'g); *Lassiter v. Shavor,* 824 S.W.2d 667, 668 (Tex. App.—Dallas 1992, no writ); *Hawthorne v. La–Man Constructors, Inc.,* 672 S.W.2d 255, 259 (Tex.App.—Beaumont 1984, no writ). Furthermore, the grounds supporting an objection made during trial must conform with the argument supporting the corresponding point of error on appeal. *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 655 (Tex.App.—Corpus Christi 1991, writ denied); *City of Brady v. Bennie,* 735 S.W.2d 275, 285 (Tex.App.—Eastland 1987, no writ). An objection made during trial which is not the same as an argument urged on appeal presents nothing for appellate review. *Id.*

■ Appellee's Sixth Amended Original Petition requested $250,000 for lost wages and employment benefits in the future. It is undisputed that the $300,000 award for fu-

ture lost wages and employment benefits exceeded the amount requested by appellee in his pleadings. However, appellants have waived this point of error.

The amount of the remittitur requested from the trial court does not conform with the amount of the remittitur requested from this Court. In their Motion to Modify, Correct or Reform Judgment, Motion for New Trial, and Motion for Judgment Notwithstanding the Verdict, appellants asked the trial court for a $260,000 remittitur. However, they ask this Court for only a $50,0000 remittitur. This discrepancy occurs because the grounds for the remittitur requested from the trial court are not the same as the argument for remittitur on appeal. Because of this discrepancy, appellants have presented nothing for appellate review. *Allsup*, 808 S.W.2d at 655; *Bennie*, 735 S.W.2d at 285.

Appellants also failed to preserve error for appellate review because they failed to object with sufficient particularity to allow the trial judge to make an informed ruling. TEX. R.APP.P. 52(a); *McKinney*, 772 S.W.2d at 74. Appellants' Motion to Modify, Correct or Reform Judgment is confusing and misleading. By this Motion, appellants argued to the trial court that the damages for past and future lost wages and employment benefits under appellee's *fraud* claim exceeded the amount sought by appellee in his *second* amended original petition. In fact, the damages award in question flowed from the wrongful discharge claim, not the fraud claim. In addition, appellee's sixth amended original petition, not his second amended original petition, constituted his live pleadings for trial. Moreover, by the time of trial, an objection directing the trial court's attention to appellee's second amended original petition was meaningless, since superseded petitions are fully replaced by amended petitions, except to the extent they are incorporated by reference. TEX.R.CIV.P. 65.

Finally, in their Motion for Judgment Notwithstanding the Verdict and to Disregard Jury Findings, appellants argued to the trial court that no pleadings support the jury's responses to questions 2(1) and 2(2) because appellee pleaded for a maximum of $100,000. However, as stated earlier, a motion for judgment notwithstanding the verdict does not preserve error caused by an award of damages in excess of the amount pleaded. TEX.R.CIV.P. 324(b)(4); *Pipgras*, 832 S.W.2d at 367.[5]

We hold that appellants waived their right to complain about the variance between the award of future lost wages and the amount pleaded. Appellants' fifth point of error is overruled.

---

5. Rule 324(b)(4) states:

> (b) **Motion for new trial required.** A point in a motion for new trial is a prerequisite to the following complaints on appeal:
>
> * \* \* \* \* \*
>
> (4) A complaint of inadequacy or excessiveness of the damages found by the jury.

Nothing could be clearer, and this Court is bound to follow the rule.

However, applying Rule 324(b)(4) to a complaint that the damages exceed those pleaded produces bizarre results. A trial court cannot render judgment in excess of the pleaded amount, and yet, here it has. The trial court could have granted the motion j.n.o.v., and we would be in error to reverse the trial court for granting such a timely motion. However, since the trial court denied the motion, appellants are required to take the additional step of requesting a new trial on the issue. To what result? Granting the parties a new trial because the judgment did not conform to the pleadings is a ridiculous waste of judicial resources. And should the trial court deny the motion, then how does this court review the case? Can we render a decision on the issue preserved by motion for new trial? Or shouldn't we rather only reverse and remand since we are actually reviewing only the denial of the motion for new trial, and "you only get what you ask for."

Finally, excepting a claim of damages in excess of pleadings from the ambit of Rule 324 will not defeat the purpose of Rule 324. Every other situation covered by Rule 324 addresses questions of fact. Such questions are not best presented to an appellate court. The rule drafters correctly determined that such deficiencies should be brought to the attention of the trial court, which is in the best position to evaluate the claim and grant immediate relief without the parties going to the expense of the appeals process. Furthermore, an affirmative answer to such a question would require remand to the fact finder to resolve those unanswered issues. However, the present situation raises no fact questions. The pleadings are simply inadequate to cover the damages awarded. Why this legal, procedural issue may not be brought in this Court is a question that only the Supreme Court can explain, and we hope they do so in the near future.

In their sixth point of error, appellants argue that the punitive damages award against Borden is excessive. After finding that Borden acted "willfully or maliciously" in discharging appellee, the jury awarded him $1,750,000 in punitive damages.

Exemplary damages primarily serve to punish the wrongdoer and to provide an example to other potential wrongdoers. *Corporate Wings, Inc. v. King,* 767 S.W.2d 485, 488 (Tex.App.—Dallas 1989, no writ). Thus, the fairness of the award from the standpoint of the injured party is but a secondary consideration. *Id.* at 489. The determination of the amount of an exemplary damages award depends upon the facts of a case and remains largely within the jury's discretion. *Voskamp v. Arnoldy,* 749 S.W.2d 113, 121 (Tex.App.—Houston [1st Dist.] 1987, writ denied). When a jury honestly awards an amount which punishes but does not oppress a wrongdoer, and is great enough to cause the wrongdoer and others similarly situated to keep from committing similar future acts, the judgement should not be disturbed by the appellate courts. *Goswami v. Thetford,* 829 S.W.2d 317, 321 (Tex.App.—El Paso 1992, writ denied) (citing *Aetna Casualty & Surety Co. v. Joseph,* 769 S.W.2d 603, 605, 608 (Tex.App.—Dallas 1989, no writ)). However, due process requires that exemplary damages must be "reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991).

The appellate courts apply two analyses to determine whether exemplary damages are excessive: 1) whether the defendant was justly punished under the circumstances of the case, and 2) whether the exemplary damages are reasonably proportional to the actual damages. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981); *First Security Bank & Trust Company v. Roach,* 493 S.W.2d 612, 619 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). The Supreme Court of Texas enunciated five factors in *Alamo Bank v. Kraus,* 616 S.W.2d at 910, to determine reasonableness: 1) the nature of the wrong, 2) the character of the conduct involved, 3) the degree of the wrongdoer's culpabilities, 4) the situation and sensibilities of the parties, and 5) the extent to which the defendant's conduct offends the public's sense of justice and propriety. *See also Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810 (Tex.App.—Corpus Christi 1988, no writ). The Court has also recognized that the financial ability of the defendant is relevant and may be considered by a jury in its determination of the amount of punitive damages to award. *Lunsford v. Morris,* 746 S.W.2d 471, 472–73 (Tex.1988); *Transmission Exchange Inc. v. Long,* 821 S.W.2d 265, 273 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

The ratio between the amount of actual and exemplary damages is only one factor to be considered in the determination of the reasonableness of exemplary damages.[6] *Kraus,* 616 S.W.2d at 910; *Long,* 821 S.W.2d at 272. An award of punitive damages nineteen times the amount of actual damages was not excessive when the jury found that an employer's conduct was extreme and outrageous, and the employer subjected an employee to repeated grabbing, lewd remarks and other sexual advances which culminated in an attempted sexual assault and resignation from her job. *Goswami,* 829 S.W.2d at 321–22. Even though the jury found a mechanic's fraudulent conduct was not malicious, where the evidence showed that the mechanic habitually cheated customers, an award of exemplary damages six times the amount of actual damages was not excessive. *Long,* 821 S.W.2d at 268, 273.

Appellee's testimony that he was "set up" to be fired and that he was offered $25,000 not to pursue a workers' compensation claim shows that Borden engaged in a systematic course of wrongful conduct over a period of several weeks. Furthermore, the jury found that Borden acted maliciously in

---

6. Chapter 41, Tex.Civ.Prac. & Rem.Code Ann. §§ 41.007–41.008, does not limit the award of exemplary damages for wrongful discharge in this case because it is "brought under the workers' compensation laws of this state." Tex.Civ. Prac. & Rem.Code Ann. § 41.002(b)(3) (Vernon Supp.1993).

wrongfully discharging appellee. Under such circumstances, we do not believe that an exemplary damages award that is approximately five times the actual damages award constitutes an excessive ratio. *Goswami,* 829 S.W.2d at 321–22; *Long,* 821 S.W.2d at 268, 273.

The jury was instructed to consider the character of the conduct involved and situation and the sensibilities of the parties concerned. The evidence showed that, at the time of trial, appellee was twenty-eight years old, with a high school education, and a wife and three children to support, yet Borden wrongfully deprived him of his livelihood. The evidence also showed that the management and supervisory personnel treated appellee with disrespect and disregard for his well-being. Even though he was a route salesman, working on commission, appellee testified that he had to clean the restrooms and wash Guffey's car. Appellee testified that Guffey scoffed at his injury when he first returned from the doctor, and that Guffey made him finish his work that day without any assistance. A memorandum indicates that, on one occasion, Guffey sent a supervisor to assist appellee, but only after appellee cried because he was in pain.

The jury was also instructed to consider the size of an exemplary damages award necessary to deter similar wrongs in the future. Evidence of another wrongful discharge lawsuit by Homer De La Rosa against Borden was introduced, and so the jury could reasonably have inferred that Borden's wrongful conduct was not an isolated incident. The evidence showed that, at the time of Guerra's discharge, the total assets of the Borden "profit center" in Corpus Christi was between $8,000,000 and $11,000,000. We do not believe that an exemplary damages award of $1,750,000 is constitutionally oppressive or unreasonable. *Haslip,* 499 U.S. at ——, 111 S.Ct. at 1045; *Goswami,* 829 S.W.2d at 321. The amount is reasonable to deter others similarly situated from committing similar wrongs in the future. *Id.*

We hold that Borden was justly punished under the facts of this case and that the award of exemplary damages is reasonably proportional to the actual damages award. *Kraus,* 616 S.W.2d at 910; *Roach,* 493 S.W.2d at 619. Appellants' sixth point of error is overruled.

### FRAUD

Pursuant to the fraud cause of action, the jury awarded appellee $25,000 in actual damages, and, upon a finding that Borden acted maliciously, $1.75 million in exemplary damages against Borden. In their seventh point of error, appellants argue that, because the fraud and wrongful discharge claims are pleaded in the alternative, and because they are inconsistent, the corresponding damages awards constitute an improper double recovery.

Pursuant to Tex.R.Civ.P. 48, a party may plead "as many separate claims or defenses as he has regardless of consistency." The "one satisfaction rule" provides that a plaintiff cannot obtain more than one recovery for the same injury. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). This rule is based on the principle that, with only one injury, "there can, in justice, be but one satisfaction for that injury." *Id.*

When, pursuant to Rule 48, a plaintiff pleads alternate theories of liability, a judgment that awards damages based upon both theories does *not* amount to a double recovery *if* the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damages on both theories of liability. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 367 (Tex.1987); *Berry Property Management, Inc. v. Bliskey,* 850 S.W.2d 644, 664–66 (Tex.App.—Corpus Christi 1993, writ filed). Cases holding that a judgment based on both alternate grounds of recovery is an impermissible double recovery involve situations in which there is only one injury, the theories of liability are mutually exclusive, or there are no separate damages findings based on the alternate theories of liability.[7] *See Southern Cty. Mut. v. First Bank &*

---

7. Appellants argue that it is impermissible, as a matter of law, for a trial court to render a judg-

ment on two grounds of recovery if they are pleaded in the alternative, regardless of the con-

*Trust,* 750 S.W.2d 170 (Tex.1988); *Birchfield,* 747 S.W.2d at 367; *Auto. Ins. Co. of Hartford v. Davila,* 805 S.W.2d 897, 902 (Tex. App.—Corpus Christi 1991, no writ).

■ In this case, Guerra suffered two separate and distinct injuries. Appellee was fired from a job paying him approximately $30,000 annually, and was deprived of $25,000 that he was promised for not pursuing a workers' compensation claim. The charge submitted four separate and distinct damages issues to the jury. Under wrongful discharge, the jury awarded $360,000 in actual damages, and $1,750,000 in punitive damages for Borden's "failure to act fairly and in good faith." For fraud, the jury awarded $25,000 in actual damages, and $1,750,000 in punitive damages for "fraud against Mr. Guerra."

The two injuries suffered by Guerra, and the corresponding theories of liability, are not mutually exclusive. They exist independently of each other. The facts supporting the wrongful discharge claim are not necessary to support the fraud claim, and, similarly, the facts necessary to support the fraud claim are not necessary to support the wrongful discharge claim. Because Guerra has suffered two separate and distinct injuries, and submitted separate and distinct damages questions based upon the corresponding theories of liability, we hold that the jury did not award more than one recovery for the same injury. Appellants' seventh point of error is overruled.

■ In their next three points of error, appellants challenge the sufficiency of the evidence supporting the award of damages for fraud. The jury answered "yes" to question 5, which asked, "Did Borden, Inc., by and through JIM GUFFEY, commit fraud against ARNOLD GUERRA?" Appellants argue in point of error eight that the record contains no evidence that Guffey made any fraudulent misrepresentation to appellee. The language of question 5 limited the jury's

determination of whether appellee was defrauded to an examination of representations made "by and through Jim Guffey."

Appellee agrees that his supervisors, Galvan and Duran, and not Guffey, represented that he would receive $25,000. It is undisputed that Guffey made no such representation to anyone, including appellee. Viewing the evidence and inferences in the light most favorable to the verdict, and disregarding all evidence and inferences to the contrary, we find no evidence of probative value that a material representation was made to appellee by Guffey. *Sherman,* 760 S.W.2d at 242; *Davis,* 752 S.W.2d at 522; *Stafford,* 726 S.W.2d at 16. We hold that no evidence supports the jury's finding to question 5. Appellants' eighth point of error is sustained.

Because they are not necessary to the final disposition of this appeal, we will not address appellants' remaining points of error. TEX. R.APP.P. 90(a). We REVERSE and RENDER the portion of the trial court's judgment pertaining to fraud and AFFIRM that portion pertaining to wrongful discharge.

NYE, C.J., not participating.

---

sistency of a plaintiff's substantive theories of liability. In support of their argument, appellants point out that appellee included in his pleading the phrase "Alternatively, pursuant to Rule 48 of the Texas Rules of Civil Procedure...." We do not believe that the mere use of the word "alternatively" should transform consistent theories of liability to inconsistent ones, thereby causing a double recovery. In substance, the wrongful discharge and fraud claims are separate and distinct theories of liability, and were tried as such.