**Pamela GRIGGS, Appellant,**

v.

**TRIPLE S INDUSTRIAL CORPORATION,**
**Appellee.**

**No. 09–05–365 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted April 13, 2006.

Decided June 29, 2006.

John S. Morgan, Lindsay & Morgan, P.L.L.C., Beaumont, for appellant.

M. Carter Crow, David Jordan, Hannah Sibiski, Shafeeqa Watkins, Fulbright & Jaworski L.L.P., Houston, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Pamela Griggs appeals the summary judgment granted in favor of her former employer in a workers' compensation retaliation case. Griggs contends Triple S Industrial Corporation ("Triple S") terminated her employment because she appeared at a benefit review conference in which her spouse, also an employee of Triple S, obtained workers' compensation benefits. Because Griggs neither testified nor was about to testify in a proceeding under the workers' compensation statutes, she did not engage in a protected activity

under the anti-retaliation statute. Accordingly, we affirm the summary judgment.

Griggs's husband David gave notice of an on-the-job injury on September 20, 2001, shortly after his employment with Triple S terminated. Appellant was not identified as a witness on the notice. According to an affidavit supplied by Robert Royal, Triple S's Safety Director, the insurance carrier initially denied the claim and David Griggs requested a benefit review conference. At the benefit review conference conducted on January 11, 2002, David Griggs and the insurance carrier agreed: (1) David Griggs sustained a compensable mental trauma injury on January 26, 2000; (2) a particular doctor was not the carrier's choice but the carrier is liable for reasonable and necessary charges incurred; and (3) disability resulted from the injury, there was no disability prior to October 23, 2001, and disability existed from that date through the date of the conference. In her deposition, Griggs describes her participation in the benefit review conference, as follows:

Q. Now, you testified earlier that you provided some information at a hearing related to your husband; is that correct? Do you recall that testimony?

A. Yes, I do.

Q. Tell me about that event.

A. I don't recall what I said, but the ombudsman was asking questions about insurance regarding Triple S paying for insurance. And Mr. Royal was giving his—what he knew about the insurance, and then I followed by what I knew about it. And that was basically all I said.

Q. With what regard, what kind of insurance?

A. Health medical insurance. And like I said, I don't remember what was said....

Q. Do you recall what the content of the discussion was, what it was about with regards to insurance?

A. No, I don't.

Q. Did you have a disagreement with Mr. Royal's characterization of the insurance?

A. Yes.

Q. What was the disagreement about?

A. I cannot remember.

Q. So, essentially, you recall talking at the hearing, but you have no idea what you said?

A. Right. I remember it was about the health—the insurance. I think it was about how much they pay, but I can't remember what was said or how much it was.

Q. Disagreement with how much they paid with regards to what?

A. What the difference was, what the employee paid, what Triple S paid.

Q. And why was the ombudsman asking questions; do you know? About this issue; do you know?

A. No, I don't at all. It had to do with the Workers' Comp hearing.

Q. And you said, you said you had a disagreement with Mr. Royal about this insurance?

A. It wasn't, I mean, no, he was just giving his—I mean, it wasn't a major disagreement. It wasn't an argument. He was just saying one thing, and I was saying another thing.

Q. Did you think Mr. Royal was wrong?

A. Not necessarily that I thought he was wrong but that I thought he might not, or maybe I thought I knew more than he did.

Q. Why would you think you knew more than Mr. Royal?

A. Conversations that I had had with the secretary that—we had spoke [sic] a lot about the insurance there.

. . . .

Q. With whose secretary?

A. The secretary at the main office.

Q. Did you have a disagreement with her, too, about the insurance?

A. Huh-uh, no.

Q. Do you remember what you disagreed about with regards to what Mr. Royal was saying?

A. I do not remember.

Q. Well, isn't that what the basis of your lawsuit is?

A. What?

Q. Isn't that what your lawsuit's all about?

A. Yeah, that they, I figured that they let me go because of this, because I supported my husband at this Workers' Comp meeting.

Q. Well, how is what you said, how do you—you said you don't even remember what you said, how is it supporting your husband?

A. Because I was there supporting him.

Q. Oh, so you believe just being there supporting him is the reason why?

A. Yes, yes.

Q. So you don't think that Triple S terminated you for anything you said, you think it was just for being there, sitting beside your husband as a present employee of Triple S?

A. Yes.

. . . .

Q. And what do you recall being said during that hearing?

A. I don't recall. There was a lot of things being said. I was never personally, myself, questioned.

Q. The Texas [Workers' Compensation] Commission representative didn't ask you any questions?

A. Not to my knowledge.

Q. The ombudsperson didn't ask you any questions?

A. Not to my knowledge.

According to David Griggs, everyone came to an agreement at the meeting and he was paid workers' compensation benefits. No adversarial workers' compensation proceedings were conducted. David Griggs did sue Exxon in connection with the accident, and Griggs testified that two friends she worked with suggested she should "back out of" the Exxon suit because she would "probably get fired over it."

An employee cannot be discharged because the employee has "testified or is about to testify in a proceeding" under the Workers' Compensation Code. TEX. LAB. CODE ANN. § 451.001 (Vernon 2006). Griggs contends she is protected from retaliation under Section 451.001 because she "testified" or was "about to testify" at the benefit review conference. According to Griggs, the word "testify" has not acquired a technical or particular meaning, and must therefore be read in context and construed according to common usage. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). To "testify," she argues, means to give information based upon personal knowledge and conviction, and is not limited to solemn declarations made under oath.

 A benefit review conference is not a hearing of record and the benefit review officer is prohibited from taking testimony. TEX. LAB.CODE ANN. § 410.026 (Vernon 2006). Therefore, Griggs's participation in the hearing could not have included providing testimony. Griggs argues our construction of "instituted" in

subsection 3 of Labor Code § 451.001 in *Duhon v. Bone & Joint Physical Therapy Clinics,* 947 S.W.2d 316, 318 (Tex.App.-Beaumont 1997, no writ), supports her broad reading of "testified" in subsection 4 of the same statute. In *Duhon,* the worker filed her compensation claim after her discharge from employment. Id. We held the worker's notice to her employer of an on-the-job-injury sufficiently instituted a workers' compensation proceeding. Id. We certainly gave "instituted" a very broad application in *Duhon,* but in that case we were following precedent established by several cases. *See id.; see also Borden, Inc. v. Guerra,* 860 S.W.2d 515, 521 (Tex.App.-Corpus Christi 1993, writ dism'd by agr.); *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 60–61 (Tex.App.-Fort Worth 1993, writ denied); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 84 (Tex.App.-El Paso 1992, no writ); *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389 (Tex.App.-Texarkana 1990, writ denied). Griggs cites us to no case where any other court held that a person appearing at a benefit review conference "testifies" for purposes of Section 451.001(4). Griggs's situation might be more closely analogous to *Duhon* if she had been terminated after the benefit review conference but before a contested case hearing was actually conducted. In such a situation, she could rationally argue that the employer's decision to terminate her employment was a matter of timing. In Griggs's case, however, the workers' compensation case fully settled through mediation before her employer terminated her employment. She cannot rationally argue that her employer laid her off in anticipation of her future testimony, when there would never be an adversarial hearing in which she could testify.

■ *Texas Mexican Railway Co. v. Bouchet,* 963 S.W.2d 52, 55 (Tex.1998), noted that "[t]he Legislature enacted [the anti-retaliation statute] in 1971 to protect 'persons who file a claim or hire an attorney or aid in filing a claim or testify at hearings concerning a claim under the Texas Workmen's Compensation Act....'" riggs contends *Bouchet* supports her position that "hyper technical construal of its provisions would work to defeat these rights." The case on which she relies must be placed into its proper context: in *Bouchet,* the Supreme Court held that the anti-retaliation statute applied only to subscribers under the workers' compensation statute, not to non-subscribers. *See id.* at 57. So *Bouchet* stands for the proposition that we must apply the statute as it is written. *See id.* at 56 ("When considering the entire legislative history of [the anti-retaliation statute], the Legislature's intent is unmistakable: [the anti-retaliation statute] is intended to apply only to employees and employers who act under the Texas Workers' Compensation Act."). Labor Code § 451.001(4) protects persons who testify in any proceeding under the workers' compensation statute. A benefit review conference is a proceeding under the statute, but participants in the conference do not testify.

■ Other statutes, such as the whistle-blower statute, protect a broad class of persons who participate in proceedings under the Labor Code. *See* Tex. Lab.Code Ann. § 21.055(4) (Vernon 2006) ("An employer ... commits an unlawful employment practice if the employer ... retaliates or discriminates against a person who, under this chapter: ... (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."). The legislature could have protected persons who assist or participate in any way in a proceeding under the workers' compensation statute, but chose to protect only

those persons who "testified." To apply the anti-retaliation statute to an employee who, like Griggs, has not actually engaged in activity declared by the legislature to be protected, would require this Court to "encroach on the at-will employment doctrine without express legislative action." *Salay v. Baylor Univ.*, 115 S.W.3d 625, 627 (Tex. App.-Waco 2003, pet. denied) (construing Labor Code section 21.055(4)). Griggs claims limiting Labor Code § 451.001(4) to actual testimony will encourage employers to discriminate against witnesses who appear at a benefit review conference. As an intermediate appellate court, we cannot "reject the most compelling interpretation of the statutory language for a 'fair' interpretation, even if we preferred as a matter of policy the result yielded by the broader interpretation." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 428 (4th Cir.2003) (construing section 510 of the Employment Retirement Income Security Act).

■ We hold that Pamela Griggs did not engage in a protected activity under the anti-retaliation statute. Therefore, the trial court did not err in granting summary judgment in favor of Triple S Industrial Corporation. Because the appellant did not engage in activity protected by Labor Code Section 451.001, she cannot recover under the anti-retaliation statute. Therefore, we do not reach the issue of whether she demonstrated a causal connection between her activity and her termination by the appellee. The judgment is affirmed.

AFFIRMED.

CHARLES KREGER, Justice, dissenting.

I respectfully dissent. Section 451.001(4) of the Texas Labor Code provides that "[a] person may not discharge or in any other manner discriminate against an employee because the employee

has: (4) testified or is about to testify in a proceeding *under Subtitle A*." TEX. LAB. CODE ANN. § 451.001(4) (Vernon 2006) (emphasis added). The majority acknowledges a benefit review conference is a proceeding under Subtitle A of the Workers' Compensation Act.

When a disputed compensation claim arises, a benefit review conference is a mandatory prerequisite before any party to the dispute can proceed with a contested hearing or arbitration. TEX. LAB.CODE ANN. § 410.024(a) (Vernon 2006). Because the employer's insurance carrier denied David Griggs' claim, he was required to request a benefit review conference before seeking further relief. *See id.* As the majority correctly notes, a benefit review conference is not a proceeding of record, and although the benefit review officer may not take testimony, he/she "may direct questions to an employee, an employer, or a representative of an insurance carrier to supplement or clarify information in a claim file." TEX. LAB.CODE ANN. § 410.026(c) (Vernon 2006). This appears to be consistent with the purpose of a benefit review conference as set out under section 410.021 of the Labor Code:

A benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to:

(1) explain, *orally* and in writing, the rights of the respective parties to a workers' compensation claim and the procedures necessary to protect those rights;

(2) *discuss* the facts of the claim, review available information in order to evaluate the claim, and delineate the disputed issues; and

(3) mediate and resolve disputed issues by agreement of the parties in accordance with this subtitle and the policies of the division.

TEX. LAB.CODE ANN. § 410.021 (Vernon 2006) (emphasis added).

The benefit review conference provisions contained in the Texas Labor Code also refer to portions of the Texas Administrative Code, particularly 28 TEX. ADMIN. CODE §§ 141.1–141.7 (2006) (Tex. Dept. of Ins., Div. of Workers' Comp., Dispute Resolution–Benefit Review Conference). Section 141.4 is titled, "Filing and Exchanging Pertinent Information," and provides, in pertinent part, the following:

> (a) As used in this section, "pertinent information" means all information relevant to the resolution of the disputed issue or issues to be addressed at the benefit review conference, including, but not limited to:
>
> > (1) information relating to the employee's wages;
> > (2) information relating to the employee's medical condition;
> > (3) *witness statements;* and
> > (4) the names of *witnesses* who will attend the conference.

*Id.* § 141.4(a)(1)-(4) (emphasis added).

Section 141.5, titled "Description of the Benefit Review Conference," includes the following selected provisions:

> (a) Definitions. As used in this section, "participant" means an individual entitled or permitted to attend and take part in a benefit review conference. Participants include:
>
> > . . . .
> >
> > (4) any other individual, at the discretion of the benefit review officer.

Id. § 141.5(a)(4). Section 141.5 then explains that the benefit review conference consists of three parts: (1) opening, (2) mediation, and (3) closing. During the "mediation" part, the benefit review officer "shall":

> (1) ask and answer questions of the parties and *other participants;*

> (2) encourage the parties to discuss the disputed issues, and ask and answer questions;

> (3) permit the employer to present evidence relevant to the disputed issues;

> (4) permit *other participants to discuss the disputed issues, and ask and answer questions,* to the extent the benefit review officer deems appropriate[.]

*Id.* § 141.5(d)(1)-(4) (emphasis added).

The majority interprets section 451.001 in light of the provisions in section 410.026(c) & (d) and finds the "most compelling interpretation" requires holding that Pamela Griggs did not engage in a protected activity under section 451.001 because she "neither testified nor was about to testify in a proceeding under the workers' compensation statutes[.]" I agree that the starting point in statutory construction is to construe the provision(s) as written and, if possible, ascertain the Legislature's intent from the language. *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex.2002). However, even when a statute is not ambiguous on its face, we may consider other factors to determine the Legislature's intent, including the object the statute seeks to obtain, legislative history, and the consequences of a particular construction. Id.; *see also Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001) (citing TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005)). Moreover, we must consider the statute as a whole and attempt to harmonize its various provisions. *Marcus Cable,* 90 S.W.3d at 706; *Helena Chem.,* 47 S.W.3d at 493. "We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. We must presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is

intended." *Helena Chem.,* 47 S.W.3d at 493 (citation omitted)(citing TEX. GOV'T CODE ANN. § 311.021(2), (3)(Vernon 2005)).

In *Texas Mexican Railway Co. v. Bouchet,* 963 S.W.2d 52 (Tex.1998), the Texas Supreme Court reaffirmed its previous interpretation of the statutory predecessor to section 451.001, TEX.REV.CIV. STAT. ANN. art. 8307c, as follows:

> The Legislature enacted article 8307c in 1971 to protect "persons who file a claim or hire an attorney or aid in filing a claim or testify at hearings concerning a claim under the Texas Workmen's Compensation Act," *see* Act of April 22, 1971, 62d Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884, because those persons "are alleged to be often fired or discriminated against by employers for such claims." HOUSE COMM. ON JUDICIARY, BILL ANALYSIS, Tex. H.B. 113, 62d Leg., R.S. (1971); *see also Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex. 1980) ("The Legislature's purpose in enacting article 8307c was to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits.").
>
> ... We need not speculate, however, about the Legislature's intent. The bill analysis from the House Committee on the Judiciary noted that the purpose of article 8307c was to protect "persons who bring Workmen's Compensation claims or testify in such actions."
>
> ....
>
> ... As we have previously recognized, the recodification of article 8307c was not a substantive revision. *See [City of LaPorte v.] Barfield,* 898 S.W.2d [288] at 293 [ (Tex.1995) ] ("The provision [article 8307c] has never been amended but has since been recodified without substan-

tive change as sections 451.001–.003 of the Texas Labor Code.").

*Bouchet,* 963 S.W.2d at 55–57.

For purposes of section 451.001(4), a benefit review conference is a proceeding under Subtitle A of the Workers' Compensation Act. It is undisputed that Pamela Griggs attended David's benefit review conference and verbally participated during the proceeding. The majority's opinion recites as much. Subsections (c) and (d) of section 410.026 do not permit the benefit review officer to formally memorialize the verbal discussions of the parties and the participants, or formally memorialize whatever documents are produced by the parties and/or the participants. *See* TEX. LAB.CODE ANN. § 410.026. Nevertheless, the entire process as set out in sections 410.021 through 410.034, and further illuminated by sections 141.1 through 141.7 of the Texas Administrative Code, clearly contemplates a free exchange of information with regard to the disputed claim, with input from any source the benefit review officer deems acceptable. *See* TEX. ADMIN. CODE § 141.5(a)(4) (Participant includes "any other individual, at the discretion of the benefit review officer."). Certainly Pamela Griggs was a "participant" during the benefit review conference and was apparently permitted by the benefit review officer to discuss the disputed issues, and ask and answer questions. *See* TEX. ADMIN. CODE § 141.5(d)(4). Therefore, interpreting the phrase "testify or about to testify" in section 451.001(4) in the most narrow, "term of art" fashion creates disharmony and inconsistency in the Workers' Compensation Act, and we may not so presume. *See* TEX. GOV'T CODE ANN. § 311.021; *Helena Chem.,* 47 S.W.3d at 493.

As noted above, when an employee's claim is initially denied, it is mandatory that he/she participate in a benefit review

conference. The provisions for a benefit review conference are found in Chapter 410 of Subtitle A. *See* TEX. LAB.CODE ANN. §§ 410.001—.308 (Vernon 2006). Of the three non-appellate administrative proceedings provided in Chapter 410 for seeking relief from a contested claim, only the benefit review conference does not permit the creation of a formal record. The other two, "Arbitration," and "Contested Hearing," permit the taking of sworn testimony and the memorialization of the proceedings similar to that in trial courts. *See* TEX. LAB.CODE ANN. §§ 410.114, 410.164 (Vernon 2006). Ultimately, when a party has exhausted its administrative remedies under Subtitle A and is dissatisfied by the final decision of the appeals panel, the party may seek judicial review in a court of law. *See* TEX. LAB.CODE ANN. § 410.251 (Vernon 2006).

For purposes of this appeal, the question is which is the more harmonious and consistent construction of section 451.001(4)— a fully prophylactic application by which an employee who verbally participates in any Subtitle A proceeding, including a benefit review conference, is included in the protected class; or the majority's selective application in which a non-claimant employee's verbal participation in the first mandated proceeding, "informal" though it may be, subjects the non-claimant employee to possible retaliatory discharge for having verbally participated? I must presume the Legislature intended the former construction of section 451.001(4) as it gives effect to the "entire statute" and evidences a more just and reasonable result. *See* TEX. LAB.CODE ANN. § 451.001(4). Because the majority construes it otherwise, I respectfully dissent.