In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-365 CV


____________________



PAMELA GRIGGS, Appellant



V.



TRIPLE S INDUSTRIAL CORPORATION, Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-171,935






OPINION


 Pamela Griggs appeals the summary judgment granted in favor of her former
employer in a workers' compensation retaliation case. Griggs contends Triple S Industrial
Corporation ("Triple S") terminated her employment because she appeared at a benefit
review conference in which her spouse, also an employee of Triple S, obtained workers'
compensation benefits. Because Griggs neither testified nor was about to testify in a
proceeding under the workers' compensation statutes, she did not engage in a protected
activity under the anti-retaliation statute. Accordingly, we affirm the summary judgment.

 Griggs's husband David gave notice of an on-the-job injury on September 20, 2001,
shortly after his employment with Triple S terminated. Appellant was not identified as a
witness on the notice. According to an affidavit supplied by Robert Royal, Triple S's
Safety Director, the insurance carrier initially denied the claim and David Griggs requested
a benefit review conference. At the benefit review conference conducted on January 11,
2002, David Griggs and the insurance carrier agreed: (1) David Griggs sustained a
compensable mental trauma injury on January 26, 2000; (2) a particular doctor was not the
carrier's choice but the carrier is liable for reasonable and necessary charges incurred; and
(3) disability resulted from the injury, there was no disability prior to October 23, 2001,
and disability existed from that date through the date of the conference. In her deposition,
Griggs describes her participation in the benefit review conference, as follows: 

 Q. Now, you testified earlier that you provided some information at
a hearing related to your husband; is that correct? Do you recall that
testimony?


 A. Yes, I do.


 Q. Tell me about that event.


 A. I don't recall what I said, but the ombudsman was asking
questions about insurance regarding Triple S paying for insurance. And Mr.
Royal was giving his -- what he knew about the insurance, and then I
followed by what I knew about it. And that was basically all I said.


 Q. With what regard, what kind of insurance?


 A. Health medical insurance. And like I said, I don't remember
what was said. . . .


 Q. Do you recall what the content of the discussion was, what it was
about with regards to insurance?


 A. No, I don't.


 Q. Did you have a disagreement with Mr. Royal's characterization
of the insurance?


 A. Yes.


 Q. What was the disagreement about?


 A. I cannot remember.


 Q. So, essentially, you recall talking at the hearing, but you have no
idea what you said?


 A. Right. I remember it was about the health -- the insurance. I
think it was about how much they pay, but I can't remember what was said
or how much it was.


 Q. Disagreement with how much they paid with regards to what?


 A. What the difference was, what the employee paid, what Triple S
paid.


 Q. And why was the ombudsman asking questions; do you know? 
About this issue; do you know?

 

 A. No, I don't at all. It had to do with the Workers' Comp hearing.


 Q. And you said, you said you had a disagreement with Mr. Royal
about this insurance?


 A. It wasn't, I mean, no, he was just giving his -- I mean, it wasn't
a major disagreement. It wasn't an argument. He was just saying one thing,
and I was saying another thing. 


 Q. Did you think Mr. Royal was wrong?


 A. Not necessarily that I thought he was wrong but that I thought he
might not, or maybe I thought I knew more than he did.


 Q. Why would you think you knew more than Mr. Royal?


 A. Conversations that I had had with the secretary that -- we had
spoke [sic] a lot about the insurance there. 


 . . . .


 Q. With whose secretary?


 A. The secretary at the main office.


 Q. Did you have a disagreement with her, too, about the insurance?


 A. Huh-uh, no.


 Q. Do you remember what you disagreed about with regards to what
Mr. Royal was saying?


 A. I do not remember.


 Q. Well, isn't that what the basis of your lawsuit is?


 A. What?


 Q. Isn't that what your lawsuit's all about?


 A. Yeah, that they, I figured that they let me go because of this,
because I supported my husband at this Workers' Comp meeting.


 Q. Well, how is what you said, how do you -- you said you don't
even remember what you said, how is it supporting your husband?


 A. Because I was there supporting him.


 Q. Oh, so you believe just being there supporting him is the reason
why?


 A. Yes, yes.


 Q. So you don't think that Triple S terminated you for anything you
said, you think it was just for being there, sitting beside your husband as a
present employee of Triple S?


 A. Yes.


 . . . .


 Q. And what do you recall being said during that hearing?


 A. I don't recall. There was a lot of things being said. I was never
personally, myself, questioned.


 Q. The Texas [Workers' Compensation] Commission representative
didn't ask you any questions?


 A. Not to my knowledge.


 Q. The ombudsperson didn't ask you any questions?


 A. Not to my knowledge.


 According to David Griggs, everyone came to an agreement at the meeting and he
was paid workers' compensation benefits. No adversarial workers' compensation
proceedings were conducted. David Griggs did sue Exxon in connection with the accident,
and Griggs testified that two friends she worked with suggested she should "back out of"
the Exxon suit because she would "probably get fired over it."

 An employee cannot be discharged because the employee has "testified or is about
to testify in a proceeding" under the Workers' Compensation Code. Tex. Lab. Code
Ann. § 451.001 (Vernon 2006). Griggs contends she is protected from retaliation under
Section 451.001 because she "testified" or was "about to testify" at the benefit review
conference. According to Griggs, the word "testify" has not acquired a technical or
particular meaning, and must therefore be read in context and construed according to
common usage. See Tex. Gov't Code Ann. § 311.011 (Vernon 2005). To "testify," she
argues, means to give information based upon personal knowledge and conviction, and is
not limited to solemn declarations made under oath.

 A benefit review conference is not a hearing of record and the benefit review officer
is prohibited from taking testimony. Tex. Lab. Code Ann. § 410.026 (Vernon 2006). 
Therefore, Griggs's participation in the hearing could not have included providing
testimony. Griggs argues our construction of "instituted" in subsection 3 of Labor Code
§ 451.001 in Duhon v. Bone & Joint Physical Therapy Clinics, 947 S.W.2d 316, 318
(Tex. App.--Beaumont 1997, no writ), supports her broad reading of "testified" in
subsection 4 of the same statute. In Duhon, the worker filed her compensation claim after
her discharge from employment. Id. We held the worker's notice to her employer of an
on-the-job-injury sufficiently instituted a workers' compensation proceeding. Id. We
certainly gave "instituted" a very broad application in Duhon, but in that case we were
following precedent established by several cases. See id.; see also Borden, Inc. v. Guerra,
860 S.W.2d 515, 521 (Tex. App.--Corpus Christi 1993, writ dism'd by agr.); Palmer v.
Miller Brewing Co., 852 S.W.2d 57, 60-61 (Tex. App.--Fort Worth 1993, writ denied);
Worsham Steel Co. v. Arias, 831 S.W.2d 81, 84 (Tex. App.--El Paso 1992, no writ);
Mid-South Bottling Co. v. Cigainero, 799 S.W.2d 385, 389 (Tex. App.--Texarkana 1990,
writ denied). Griggs cites us to no case where any other court held that a person appearing
at a benefit review conference "testifies" for purposes of Section 451.001(4). Griggs's
situation might be more closely analogous to Duhon if she had been terminated after the
benefit review conference but before a contested case hearing was actually conducted. In
such a situation, she could rationally argue that the employer's decision to terminate her
employment was a matter of timing. In Griggs's case, however, the workers'
compensation case fully settled through mediation before her employer terminated her
employment. She cannot rationally argue that her employer laid her off in anticipation of
her future testimony, when there would never be an adversarial hearing in which she could
testify.

 Texas Mexican Railway Co. v. Bouchet, 963 S.W.2d 52, 55 (Tex. 1998), noted that
"[t]he Legislature enacted [the anti-retaliation statute] in 1971 to protect 'persons who file
a claim or hire an attorney or aid in filing a claim or testify at hearings concerning a claim
under the Texas Workmen's Compensation Act. . . .'" Griggs contends Bouchet supports
her position that "hyper technical construal of its provisions would work to defeat these
rights." The case on which she relies must be placed into its proper context: in Bouchet,
the Supreme Court held that the anti-retaliation statute applied only to subscribers under
the workers' compensation statute, not to non-subscribers. See id. at 57. So Bouchet
stands for the proposition that we must apply the statute as it is written. See id. at 56
("When considering the entire legislative history of [the anti-retaliation statute], the
Legislature's intent is unmistakable: [the anti-retaliation statute] is intended to apply only
to employees and employers who act under the Texas Workers' Compensation Act."). 
Labor Code § 451.001(4) protects persons who testify in any proceeding under the
workers' compensation statute. A benefit review conference is a proceeding under the
statute, but participants in the conference do not testify. 

 Other statutes, such as the whistleblower statute, protect a broad class of persons
who participate in proceedings under the Labor Code. See Tex. Lab. Code Ann. §
21.055(4) (Vernon 2006) ("An employer . . . commits an unlawful employment practice
if the employer . . . retaliates or discriminates against a person who, under this chapter:
. . . (4) testifies, assists, or participates in any manner in an investigation, proceeding, or
hearing."). The legislature could have protected persons who assist or participate in any
way in a proceeding under the workers' compensation statute, but chose to protect only
those persons who "testified." To apply the anti-retaliation statute to an employee who,
like Griggs, has not actually engaged in activity declared by the legislature to be protected,
would require this Court to "encroach on the at-will employment doctrine without express
legislative action." Salay v. Baylor Univ., 115 S.W.3d 625, 627 (Tex. App.--Waco 2003,
pet. denied) (construing Labor Code section 21.055(4)). Griggs claims limiting Labor
Code § 451.001(4) to actual testimony will encourage employers to discriminate against
witnesses who appear at a benefit review conference. As an intermediate appellate court,
we cannot "reject the most compelling interpretation of the statutory language for a 'fair'
interpretation, even if we preferred as a matter of policy the result yielded by the broader
interpretation." King v. Marriott Int'l, Inc., 337 F.3d 421, 428 (4th Cir. 2003)
(construing section 510 of the Employment Retirement Income Security Act).

 We hold that Pamela Griggs did not engage in a protected activity under the anti-retaliation statute. Therefore, the trial court did not err in granting summary judgment in
favor of Triple S Industrial Corporation. Because the appellant did not engage in activity
protected by Labor Code Section 451.001, she cannot recover under the anti-retaliation
statute. Therefore, we do not reach the issue of whether she demonstrated a causal
connection between her activity and her termination by the appellee. The judgment is
affirmed.

 AFFIRMED.




 ______________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on April 13, 2006

Opinion Delivered June 29, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ.



DISSENTING OPINION


 I respectfully dissent. Section 451.001(4) of the Texas Labor Code provides that "[a]
person may not discharge or in any other manner discriminate against an employee because
the employee has: (4) testified or is about to testify in a proceeding under Subtitle A." Tex.
Lab. Code Ann. § 451.001(4) (Vernon 2006) (emphasis added). The majority acknowledges
a benefit review conference is a proceeding under Subtitle A of the Workers' Compensation
Act. 

 When a disputed compensation claim arises, a benefit review conference is a
mandatory prerequisite before any party to the dispute can proceed with a contested hearing
or arbitration. Tex. Lab. Code Ann. § 410.024(a) (Vernon 2006). Because the employer's
insurance carrier denied David Griggs' claim, he was required to request a benefit review
conference before seeking further relief. See id. As the majority correctly notes, a benefit 
review conference is not a proceeding of record, and although the benefit review officer may
not take testimony, he/she "may direct questions to an employee, an employer, or a
representative of an insurance carrier to supplement or clarify information in a claim file." 
Tex. Lab. Code Ann. § 410.026(c) (Vernon 2006). This appears to be consistent with the
purpose of a benefit review conference as set out under section 410.021 of the Labor Code:

 A benefit review conference is a nonadversarial, informal dispute resolution
proceeding designed to:


 (1) explain, orally and in writing, the rights of the respective parties to
a workers' compensation claim and the procedures necessary to protect those
rights; 

 (2) discuss the facts of the claim, review available information in order
to evaluate the claim, and delineate the disputed issues; and 

 (3) mediate and resolve disputed issues by agreement of the parties in
accordance with this subtitle and the policies of the division.


Tex. Lab. Code Ann. § 410.021 (Vernon 2006) (emphasis added).

 The benefit review conference provisions contained in the Texas Labor Code also
refer to portions of the Texas Administrative Code, particularly 28 Tex. Admin. Code §§
141.1-141.7 (2006) (Tex. Dept. of Ins., Div. of Workers' Comp., Dispute Resolution-Benefit
Review Conference). Section 141.4 is titled, "Filing and Exchanging Pertinent Information,"
and provides, in pertinent part, the following:

 (a) As used in this section, "pertinent information" means all information
relevant to the resolution of the disputed issue or issues to be addressed at the
benefit review conference, including, but not limited to:

 (1) information relating to the employee's wages;

 (2) information relating to the employee's medical condition;

 (3) witness statements; and

 (4) the names of witnesses who will attend the conference.


Id. § 141.4(a)(1)-(4) (emphasis added).

 Section 141.5, titled "Description of the Benefit Review Conference," includes the
following selected provisions:

 (a) Definitions. As used in this section, "participant" means an individual
entitled or permitted to attend and take part in a benefit review conference. 
Participants include:


 . . . .


 (4) any other individual, at the discretion of the benefit review officer. 


Id. § 141.5(a)(4). Section 141.5 then explains that the benefit review conference consists of
three parts: (1) opening, (2) mediation, and (3) closing. During the "mediation" part, the
benefit review officer "shall": 

 (1) ask and answer questions of the parties and other participants; 

 (2) encourage the parties to discuss the disputed issues, and ask and answer
questions;

 (3) permit the employer to present evidence relevant to the disputed issues;

 (4) permit other participants to discuss the disputed issues, and ask and
answer questions, to the extent the benefit review officer deems appropriate[.] 


Id. § 141.5(d)(1)-(4) (emphasis added).

 The majority interprets section 451.001 in light of the provisions in section 410.026(c)
& (d) and finds the "most compelling interpretation" requires holding that Pamela Griggs did
not engage in a protected activity under section 451.001 because she "neither testified nor
was about to testify in a proceeding under the workers' compensation statutes[.]" I agree that
the starting point in statutory construction is to construe the provision(s) as written and, if
possible, ascertain the Legislature's intent from the language. See Marcus Cable Assocs.,
L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002). However, even when a statute is not
ambiguous on its face, we may consider other factors to determine the Legislature's intent,
including the object the statute seeks to obtain, legislative history, and the consequences of
a particular construction. Id.; see also Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001) (citing Tex. Gov't Code Ann. § 311.023 (Vernon 2005)). Moreover, we must
consider the statute as a whole and attempt to harmonize its various provisions. Marcus
Cable, 90 S.W.3d at 706; Helena Chem., 47 S.W.3d at 493. "We should not give one
provision a meaning out of harmony or inconsistent with other provisions, although it might
be susceptible to such a construction standing alone. We must presume that the Legislature
intends an entire statute to be effective and that a just and reasonable result is intended." 
Helena Chem., 47 S.W.3d at 493 (citation omitted)(citing Tex. Gov't Code Ann. §
311.021(2), (3)(Vernon 2005)).

 In Texas Mexican Railway Co. v. Bouchet, 963 S.W.2d 52 (Tex. 1998), the Texas
Supreme Court reaffirmed its previous interpretation of the statutory predecessor to section
451.001, Tex. Rev. Civ. Stat. Ann. art. 8307c, as follows:

 The Legislature enacted article 8307c in 1971 to protect "persons who file a
claim or hire an attorney or aid in filing a claim or testify at hearings
concerning a claim under the Texas Workmen's Compensation Act," see Act
of April 22, 1971, 62d Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884, because
those persons "are alleged to be often fired or discriminated against by
employers for such claims." HOUSE COMM. ON JUDICIARY, BILL
ANALYSIS, Tex. H.B. 113, 62d Leg., R.S. (1971); see also Carnation Co. v.
Borner, 610 S.W.2d 450, 453 (Tex. 1980) ("The Legislature's purpose in
enacting article 8307c was to protect persons who are entitled to benefits under
the Worker's Compensation Law and to prevent them from being discharged
by reason of taking steps to collect such benefits.").


 . . . We need not speculate, however, about the Legislature's intent. 
The bill analysis from the House Committee on the Judiciary noted that the
purpose of article 8307c was to protect "persons who bring Workmen's
Compensation claims or testify in such actions."


 . . . .


 . . . As we have previously recognized, the recodification of article
8307c was not a substantive revision. See [City of LaPorte v. ]Barfield, 898
S.W.2d [288] at 293 [(Tex. 1995)] ("The provision [article 8307c] has never
been amended but has since been recodified without substantive change as
sections 451.001-.003 of the Texas Labor Code."). 


Bouchet, 963 S.W.2d at 55-57.

 For purposes of section 451.001(4), a benefit review conference is a proceeding under
Subtitle A of the Workers' Compensation Act. It is undisputed that Pamela Griggs attended
David's benefit review conference and verbally participated during the proceeding. The
majority's opinion recites as much. Subsections (c) and (d) of section 410.026 do not permit
the benefit review officer to formally memorialize the verbal discussions of the parties and
the participants, or formally memorialize whatever documents are produced by the parties
and/or the participants. See Tex. Lab. Code Ann. § 410.026. Nevertheless, the entire
process as set out in sections 410.021 through 410.034, and further illuminated by sections
141.1 through 141.7 of the Texas Administrative Code, clearly contemplates a free exchange
of information with regard to the disputed claim, with input from any source the benefit
review officer deems acceptable. See Tex. Admin. Code § 141.5(a)(4) (Participant includes
"any other individual, at the discretion of the benefit review officer."). Certainly Pamela
Griggs was a "participant" during the benefit review conference and was apparently
permitted by the benefit review officer to discuss the disputed issues, and ask and answer
questions. See Tex. Admin. Code § 141.5(d)(4). Therefore, interpreting the phrase "testify
or about to testify" in section 451.001(4) in the most narrow, "term of art" fashion creates
disharmony and inconsistency in the Workers' Compensation Act, and we may not so
presume. See Tex. Gov't Code Ann. § 311.021; Helena Chem., 47 S.W.3d at 493. 

 As noted above, when an employee's claim is initially denied, it is mandatory that
he/she participate in a benefit review conference. The provisions for a benefit review
conference are found in Chapter 410 of Subtitle A. See Tex. Lab. Code Ann. §§ 410.001 -
.308 (Vernon 2006). Of the three non-appellate administrative proceedings provided in
Chapter 410 for seeking relief from a contested claim, only the benefit review conference
does not permit the creation of a formal record. The other two, "Arbitration," and "Contested
Hearing," permit the taking of sworn testimony and the memorialization of the proceedings
similar to that in trial courts. See Tex. Lab. Code Ann. §§ 410.114, 410.164 (Vernon 2006). 
Ultimately, when a party has exhausted its administrative remedies under Subtitle A and is
dissatisfied by the final decision of the appeals panel, the party may seek judicial review in
a court of law. See Tex. Lab. Code Ann. § 410.251 (Vernon 2006). 

 For purposes of this appeal, the question is which is the more harmonious and
consistent construction of section 451.001(4) - - a fully prophylactic application by which
an employee who verbally participates in any Subtitle A proceeding, including a benefit
review conference, is included in the protected class; or the majority's selective application
in which a non-claimant employee's verbal participation in the first mandated proceeding,
"informal" though it may be, subjects the non-claimant employee to possible retaliatory
discharge for having verbally participated? I must presume the Legislature intended the
former construction of section 451.001(4) as it gives effect to the "entire statute" and
evidences a more just and reasonable result. See Tex. Lab. Code Ann. § 451.001(4). 
Because the majority construes it otherwise, I respectfully dissent.



 ____________________________

 CHARLES KREGER

 JUSTICE


Dissent Delivered

June 29, 2006