NUMBER 13-09-00637-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

MICHAEL B. WANSEY, INDIVIDUALLY
AND D/B/A 

RIO GRANDE DEFENSIVE
DRIVING SCHOOL,                  Appellant,

 

v.

 

CHERYL D. HOLE,                                                                  
 Appellee.

                                                                                                                     
  

 

On appeal from the County
Court at Law No. 2 

of Hidalgo County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides

Memorandum Opinion by
Justice Rodriguez

 

In this breach of contract and negligent
hiring, training, and retention case, appellant Michael B. Wansey, individually
and d/b/a Rio Grande Defensive Driving School, challenges the jury's verdict in
favor of appellee Cheryl D. Hole.  By eight issues,[1]
Wansey argues that:  the evidence at trial was legally and factually
insufficient to support the jury's finding that (1) Wansey negligently hired,
trained, and retained a certain driving instructor, (2) any act or omission by
Wansey or the driving instructor proximately caused Hole's injury, (3) Hole
suffered any damages as a result of the negligent hiring, training, and
retention, (4) Wansey breached the contract to provide driver instruction
training to Hole's daughter, (5) Hole suffered damages as a result of that
breach of contract, and (6) Wansey acted with malice or gross negligence such
that Hole was entitled to exemplary damages; (7) because there was no breach of
contract, Hole was not entitled to attorneys' fees; and (8) the exemplary
damages award violates the Due Process Clause of the United States Constitution
because it was sixty-six times the actual damages award.  We affirm, in part,
and reverse and render, in part.

I. 
Background

 

            Hole's daughter was a student at the driving
school owned by Wansey.  One night, when Hole's husband arrived to pick up
their daughter from class, he found her in the back of the school with her
driving instructor in what Hole's husband alleged was a suspicious and
compromising situation.  The Holes withdrew their daughter from the driving
school, demanded a full refund of the fee they paid for the driving class, and
asked for an explanation of the driving instructor's conduct.  Wansey sent the
Holes a partial refund based on the number of hours of instruction that their
daughter had already received at the school.  Wansey also sent the Holes a
letter attempting to explain the circumstances in which they found their
daughter with the driving instructor.

Hole filed suit against Wansey alleging
claims of breach of contract, negligence in the hiring, supervision, training,
or retention of his employees, and gross negligence.[2] 
Hole prayed for contract damages and actual and exemplary damages for her
negligence claim.  The case was tried to a jury, which returned a favorable
verdict to Hole on both the breach of contract claim and the negligence claim. 
The jury awarded Hole $225.00 in contract damages and $5,000.00 in attorneys'
fees related to that claim.  For her negligence claim, the jury awarded Hole
$225.00 in actual damages, found by clear and convincing evidence that the harm
to Hole was the result of malice or gross negligence, and awarded Hole
$15,000.00 in exemplary damages.  Wansey filed a motion for new trial, which
was overruled by operation of law.  See Tex. R. Civ. P. 329b(c).  This appeal followed.

II. 
Sufficiency of the Evidence

 

            By five issues, Wansey challenges the legal
and factual sufficiency of the evidence supporting the jury's findings as to
negligence, breach of contract, and actual and exemplary damages.

A.  Standard of
Review

 

            We may sustain a legal sufficiency challenge
only when:  (1) the record discloses a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable fact finder could
and disregard evidence contrary to the finding unless a reasonable fact finder
could not.  City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex.
2005).  

In reviewing an appellant's factual
sufficiency challenge to an adverse jury finding on which the other party had
the burden of proof, as is the case here, we will consider, weigh, and examine
all of the evidence in the record, both in support of and contrary to the
finding.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.
2001).  We will set aside the district court's finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

In the context of a jury trial, the
sufficiency of the evidence is reviewed in light of the charge submitted if no
objection is made to the charge.  Romero v. KPH Consolidation, Inc., 166
S.W.3d 212, 221 (Tex. 2005); Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d
711, 715 (Tex. 2001).  Here, although Wansey expressed some concerns with the
jury charge, it appears from the record that they were resolved in his favor in
the charge given to the jury, and the trial court therefore never ruled on his
objections, if any.  Thus, we review the evidence under the law as set out in
the jury charge.  See Romero, 166 S.W.3d at 221. 

B. 
Negligence

            By his first, second, and third issues,
Wansey challenges the sufficiency of the evidence supporting the jury's
findings on Hole's cause of action for negligent hiring, training, supervision,
and retention.

1.  Jury Questions

            The jury was questioned as follows regarding
Wansey's liability for negligence:  "Did the negligence if any of [Wansey]
proximately cause the occurrence in question?"  The charge also included
the following definitions:

"NEGLIGENCE" when used with
respect to the conduct of [Wansey], means failure to use ordinary care, that
is, failing to do what a driving school of ordinary prudence would have done
under the same or similar circumstances or doing that which a driving school of
ordinary prudence would not have done under the same or similar circumstances.

 

"ORDINARY
CARE"
when used with respect to the conduct of [Wansey], means that degree of care
that a driving school of ordinary prudence would use under the same or similar
circumstances.

 

"PROXIMATE
CAUSE,"
when used with respect to the conduct of [Wansey] means that cause which, in a
natural and continuous sequence, produces an event, and without which cause
such event would not have occurred.  In order to be a proximate cause, the act
or omission complained of must be such that a driving school using ordinary
care would have foreseen that the event, or some similar event, might reasonably
result therefrom.  There may be more than one proximate cause of an event.

 

The jury was questioned as follows regarding negligence
damages:  "What sum of money, if any, if paid now in cash, would fairly
and reasonably compensate Cheryl Hole for her damages, if any, that resulted
from [the] occurrence in question."  

2.  The Evidence

At trial, Hole's husband testified in
detail about the occurrence.  He testified that when he arrived to pick up his
daughter and she did not exit the driving school with the other students, he
became suspicious.  He went into the school, and a person inside the classroom
pointed to a back exit door and indicated that he should look out there for his
daughter.  Hole's husband testified that when he tried to open the exit door,
someone was holding it shut, and when he managed to get outside, he found his
daughter in a dark area in back of the driving school with her instructor.  His
daughter's books were on the ground, and she stepped quickly away from the
instructor when Hole's husband came through the door.  Hole's husband testified
that they decided to withdraw their daughter from the class because they did
not trust the safety of the situation at Wansey's driving school.  He also
testified that they enrolled their daughter in another, more expensive driving
course and that she had to start the course from the beginning even though she
was only four hours short of completing the course at Wansey's school.

Hole admitted into evidence two letters
written to Wansey by her husband informing Wansey that they would be
withdrawing their daughter, requesting an explanation of the incident, and
demanding a full refund of the fee for the driving course; both letters stated
that the Holes would possibly take legal action if Wansey did not comply.  Hole
also admitted into evidence two letters from Wansey to the Holes.  The first
letter, sent in response to the Holes' first letter, contained a one sentence
reply:  "Your letter of January 18 has been received and the contents noted." 
In his second letter to the Holes, in response to their second letter, Wansey
informed the Holes that he would not be refunding their fee in full, would send
a "pro-rata" refund for the portion of the course not taken, and
would be cancelling their daughter's learner permit because she was withdrawn
before making up her missed classes.  Wansey then described the incident in
question based on "information[] from persons who were there at the
time":

[O]ur
instructor, having concluded his work, went outside for a welcome smoke.  

 

He
held the door open because it has a strong hydraulic closer and if let go, will
close itself, locking the individual out.  

 

[Hole's
daughter], at this point wandered out and started to ask the instructor about
the Junior R.O.T.C., a subject in which [the instructor] has considerable
knowledge.  

 

She
stood alone, a few feet away from him, and as he smoked, he answered her
questions.

 

That's
called exercising her 1st Amendment rights.  Our instructor was politely
answering her questions.

 

That's
the scene you saw when you nearly knocked our instructor off his feet as he was
holding the door open.

 

Wansey's second letter concluded, "Your threats are
rejected . . . .  Until you march up to our door with a writ in your hand, you
don't give us orders."  Wansey's "pro-rata" refund check to the
Holes for $18.00 was admitted into evidence.

            Hole presented evidence at trial that Wansey
had employed two instructors in the past whose teaching licenses were revoked
for inappropriate sexual conduct with students.  Hole also introduced a memo
written by Wansey's wife to the driving school's employees noting that two
students had complained that an in-car instructor had made inappropriate sexual
advances toward them.  In the memo, Wansey's wife stated, "We are going on
record with this memo to tell you not [to] say or do anything that might be
deemed inappropriate in the slightest way.  In other words, think before you
open your mouth."  Wansey admitted in the litigation, however, that his
driving school has no written policies regarding student-teacher relations and
that he does not perform background checks on his employees.  Finally, Hole
produced evidence that Wansey had repeatedly refused to take responsibility for
the behavior of his instructors and students, stating, in particular, that
"[we] are NOT responsible for what students do after classes, in
particular if they take action under their own volition."

3.  Liability

            By his first issue, Wansey argues the
evidence was legally and factually insufficient to support the jury's finding
that Wansey negligently hired, trained, and retained the driving instructor
involved in the incident with the Holes' daughter.  We disagree.  Hole presented
evidence that the driving instructor engaged in inappropriate behavior with
Hole's daughter and that Wansey had no policies or procedures in place to
prohibit or govern such a situation.  Hole also presented evidence that Wansey
does not perform background checks on his employees.  Although there was
evidence that Wansey had informally warned employees against engaging students
in an inappropriate way, Hole's evidence that Wansey had no official policies
and procedures in place was sufficient to support the jury's verdict under the
facts of this case.  In other words, there was sufficient evidence that Wansey
failed to act in a way that a driving school owner of ordinary prudence should
act when operating a school for young students.  Thus, viewing the evidence in
the light most favorable to the verdict, we conclude there was more than a
scintilla of evidence that Wansey failed to exercise ordinary care in the
hiring, training, and retention of his driving instructors.  See Chapman,
118 S.W.3d at 751.  Further, considering evidence both favorable and contrary
to the verdict, we cannot conclude that the jury's finding was so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  See Francis, 46 S.W.3d at 242; Cain, 709 S.W.2d
at 176.  Wansey's first issue is overruled.

            By his second issue, Wansey argues that the
evidence was legally and factually insufficient to prove that his negligence
was the proximate cause of any injury to Hole.  Again, we disagree.  The
evidence at trial showed that Wansey's failure to create a safe learning
environment through the proper screening and control of his employees caused
the Holes to withdraw their daughter from Wansey's driving school.  The Holes
were subsequently required to enroll their daughter in another school at
additional cost to them and at which their daughter was required to restart her
driver's education from the beginning.  This result should have been
foreseeable to Wansey because he had employed instructors in the past whose
inappropriate behavior prompted student complaints and had even resulted in the
revocation of instructors' licenses.  The Holes' withdrawal of their daughter
from Wansey's school was a natural and continuous consequence of Wansey's lax
screening procedures and absent employment policies, which resulted in the
employment of an instructor who engaged in inappropriate behavior with the
Holes' daughter.  Therefore, again viewing the evidence in the light most
favorable to the verdict, we conclude there was more than a scintilla of
evidence that Wansey's negligence was the proximate cause of the Hole's injury,
i.e., the withdrawal of the Holes' daughter from Wansey's school and subsequent
costs incurred by enrolling her in a different program.  See Chapman,
118 S.W.3d at 751.  And, again, we cannot conclude that the jury's finding on
proximate cause was so contrary to the overwhelming weight of the evidence as
to be clearly wrong and manifestly unjust.  See Francis, 46
S.W.3d at 242; Cain, 709 S.W.2d at 176.  Wansey's second issue is
overruled.

4.  Damages

            By his third issue, Wansey
argues that the evidence was legally and factually insufficient to show that
Hole suffered any damages as a result of the incident.  As previously discussed,
Hole presented evidence that she and her husband decided to withdraw their
daughter from Wansey's school because of the incident in question.  As a
result, they had to pay for an additional driver's education course.  The
evidence therefore supported the jury's negligence award of $225.00.  It
represented the amount of the fee paid by the Holes to Wansey's school—in other
words, the sum of money the Holes would not have lost but for Wansey's
negligence.  Viewing the evidence in the light most favorable to the verdict,
we conclude there was more than a scintilla of evidence supporting the jury's
negligence damage award.  See Chapman, 118 S.W.3d at 751.  And,
after reviewing all of the evidence both in support of and contrary to the
verdict, we cannot conclude that the jury's award was so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  See Francis, 46 S.W.3d at 242; Cain, 709 S.W.2d
at 176.  Wansey's third issue is overruled.

C. 
Breach of Contract

            By his fourth issue, Wansey argues that the
evidence was legally and factually insufficient to support the jury's breach of
contract finding.  We agree.  

The jury was questioned as follows: 
"Did [Wansey] breach the Student Enrollment Contract entered into between
Rio Grande Defensive Driving School and Cheryl Hole?"[3] 
The contract provided that the Holes' daughter would receive thirty-two hours
of classroom instruction and twenty-one "behind-the-wheel" lessons. 
The contract price was $186 for the course fees and $39 in administrative
expenses, for a total of $225, which the Holes paid in full.  The contract
included an attendance policy, a grading and progress policy, and rules of
conduct for students.  The contract also included a notice from the Texas Education
Agency, enumerating for parents the minimum requirements for teen driver
education courses under the law.  Finally, the contract contained a refund
policy, which provided, in relevant part, as follows:

1.         Refund
computations will be based on actual instruction received through the last date
of attendance.

 

2.         The
effective date of the termination for refund purposes will be the earliest of
the following:  (a) the last day of attendance, if the student is terminated by
the school; or (b) the date of receipt of written notice from the student.

 

            . . . .

 

5.         A
full refund of all tuition and fees is due and refundable in each of the
following cases:  (a) when an enrollee is not accepted by the school; (b) if
the course of instruction is discontinued by the school at this location; or
(c) if the student's enrollment was procured as a result of any
misrepresentation in advertising, promotional materials of the school, or
misrepresentation by the owner or representation of the school.

 

6.         Refunds
shall be completed within 30 days after the effective date of termination.

 

            Hole's theory at trial was that, because the
Holes were forced to withdraw their daughter from Wansey's school "for
cause," Wansey breached the contract by not providing the entire course of
instruction.  In her petition, Hole alleged that Wansey breached the contract
by "fail[ing] to properly supervise [his] employees and fail[ing] to
provide a safe and proper environment for their students . . . ."  Hole
also prayed to be "reimbursed in full" for the contract price.  But
the contract here contained no provisions governing particular reasons for a
student's withdrawal or covenanting or promising anything related to the
driving school's employees.  Further, Hole alleged no facts and produced no
evidence at trial that would have qualified her for a full refund under the
contract.  Rather, the evidence at trial established that Wansey complied with
the contract by sending the Holes a partial refund based on the instruction
already received by the Holes' daughter.  This is all evidence no reasonable
juror could have ignored.  See City of Keller, 168 S.W.3d at 807, 827. 
We conclude the trial record is devoid of any evidence of a breach by Wansey of
the student enrollment contract, and in light of this complete absence of
evidence of a vital fact, the jury's verdict was not supported by legally
sufficient evidence.  See Chapman, 118 S.W.3d at 751.  Wansey's
fourth issue is sustained.[4] 


            By his fifth and seventh issues,
respectively, Wansey argues that:  the evidence was insufficient to show that
Hole suffered damages as a result of the breach of contract; and if we were to
determine that the evidence was insufficient to support the breach of contract
finding, we must also reverse the attorneys' fees awarded to Hole on the basis
of breach of contract.  Having already determined that the evidence was legally
insufficient to support the jury's breach of contract liability finding, we
further conclude that Hole was not entitled to contract damages or attorneys'
fees based on a breach of contract.  Wansey's fifth and seventh issues are
likewise sustained.

III. 
Malice or Gross Negligence

 

            By his sixth issue, Wansey argues that the
evidence was legally and factually insufficient to prove that Wansey acted with
malice or gross negligence.  However, because there was no objection, we are
guided in our analysis of Wansey's evidentiary issue by the standard and
applicable law set out in the jury charge:

Do
you find by clear and convincing evidence that the harm to Cheryl Hole resulted
from malice or gross negligence?

            

 

"Clear
and convincing evidence" means the measure or degree of proof that
produces a firm belief or conviction of the truth of the allegations sought to
be established.

 

            "Malice"
means specific intent by [Wansey] to cause substantial injury or harm to Cheryl
Hole.

 

            "Gross
negligence" means more than momentary thoughtlessness, inadvertence, or
error of judgment.  It means such an entire want of care as to establish that
the act or omission in question was the result of actual conscious indifference
to the rights, welfare, or safety of the persons affected by it.

 

We will therefore determine whether Hole produced clear
and convincing evidence that Wansey's conduct rose to the level of malice or
gross negligence.  See Romero, 166 S.W.3d at 221.

As noted above, Hole produced evidence
that, even though Wansey had employed instructors in the past who were known to
have inappropriate sexual conduct with young female students, he had no formal
policy regarding instructor-student relations and did not perform background
checks on his employees.  Further, Hole produced evidence that Wansey did not
believe it was his responsibility to prohibit or prevent the sort of incident
that occurred between the Holes' daughter and her driving instructor.  In fact,
the evidence showed that Wansey repeatedly and adamantly refused to take such
responsibility or admit that his employment practices were problematic.  In
particular, Wansey's letter to the Holes was hostile in tone and indicated an
almost stubborn ignorance to the circumstances at his school.  In short, there
was ample evidence from which the jury could have found that Wansey's conduct
was "more than momentary thoughtlessness, inadvertence, or error of
judgment" and, instead, exhibited "an entire want of care" and
"actual conscious indifference to the rights, welfare, or safety of the
persons affected" by Wansey's conduct.  We thus conclude that there was
sufficient evidence to produce in the minds of the jurors a firm belief that
Wansey's conduct amounted to gross negligence.  Wansey's sixth issue is
overruled.

IV. 
Exemplary Damages and Due Process

 

            By his eighth issue, Wansey argues that the
jury's $15,000.00 exemplary damages award was unconstitutionally excessive and
violated the Due Process Clause of the United States Constitution because it
was sixty-six times the actual damages award.  See U.S. Const. amend. XIV.  We disagree.

            "The Due Process Clause 'prohibits a
[s]tate from imposing a grossly excessive punishment on a tortfeasor.'"  Owens-Corning
Fiberglass Corp. v. Malone, 972 S.W.2d 35, 45 (Tex. 1998) (quoting BMW
of N. Am. v. Gore, 517 U.S. 559, 562 (1996)).  In reviewing exemplary
damages, we are instructed to consider three guideposts:  "(1) the degree
of reprehensibility of the defendant's misconduct; (2) the disparity between
the actual or potential harm suffered by the plaintiff and the punitive damages
award; and (3) the difference between the punitive damages awarded by the jury
and the civil penalties authorized or imposed in comparable cases."  State
Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003); see Tony
Gullo Motors I, Inc. v. Chapa, 212 S.W.3d 299, 308-09 (Tex. 2006).  The
reprehensibility of the defendant's conduct is the "most important
indicium of the reasonableness of a punitive damages award . . . ."  Campbell,
538 U.S. at 419.  In assessing reprehensibility, we determine whether:  the
plaintiff's health or safety was endangered, as opposed to his economic
well-being; the tortious conduct evidenced a reckless disregard for or
indifference to the health or safety of others; the plaintiff was financially
vulnerable; the conduct was repeated; and the injury was the result of malice,
trickery, or deceit.  Id.  Further, "a reprehensibility analysis
can . . . consider, to some extent, surrounding
circumstances beyond the underlying tort."  Bennett v. Reynolds,
315 S.W.3d 867, 875 (Tex. 2010).  

            With regard to the reprehensibility of
Wansey's conduct, the evidence at trial, as discussed above, showed a conscious
disregard by Wansey for the safety of his students.  Despite having multiple
past experiences with driving instructors who engaged in inappropriate conduct
with students, Wansey still did not perform background checks on employees and
had no official policy in place to govern the relationship between instructors
and students.  This same evidence demonstrates that Wansey's disregard produced
repeated incidents of inappropriate contact between instructors and students. 
Wansey's flippant response to the Holes' inquiries is but further evidence of
his indifference to the situation.  The evidence at trial therefore showed that
Wansey's conduct evidenced a reckless disregard for his students' safety and
was repeated.  See Campbell, 538 U.S. at 418; see also Bennett,
315 S.W.3d at 875 (allowing the reviewing court to consider circumstances
occurring before the commission of the particular tort giving rise to the
plaintiff's cause of action).  Our analysis of the first guidepost weighs in
favor of the punitive damages awarded to Hole.

            As to the second guidepost, we note that
courts have held that a single-digit ratio between the exemplary and actual
damages would "more likely" comport with due process and that the
exemplary damages award in this case was roughly sixty-six times the actual
damages award.  See Campbell, 538 U.S. at 425; see, e.g., Malone,
972 S.W.2d at 46-47 (affirming an exemplary damages award of "slightly
more than" two times the compensatory damages); Borden, Inc. v. Guerra,
860 S.W.2d 515, 528 (Tex. App–Corpus Christi 1993, writ dism'd by agr.)
(approving an exemplary award that was five times the amount of actual
damages).  However, we also recognize that there is no "bright-line
ratio" between the actual damages suffered and punitive damages awarded
that will mandate the affirming or reversal of an award.  See Campbell,
538 U.S. at 424-25.  Importantly, where "a particularly egregious act has
resulted in only a small amount of economic damages," as is the case here,
ratios greater than single digits will be considered constitutional.  Id.
at 425.  Exemplary damages are intended to punish the wrongdoer and act as a
deterrence to others.  Bennett, 315 S.W.3d at 874.  With that precept
guiding our analysis, we cannot conclude, under the facts of this case, that
the exemplary damages award was unreasonable and impermissibly disproportionate
to the amount of harm suffered by Hole.  See Campbell, 538 U.S. at
425-26.

            The third and final guidepost requires the
Court to examine the civil penalties authorized or imposed in comparable
cases.  Id. at 428.  We note that, in a case like this involving a
common law tort that does not readily compare to statutory causes of action, we
are also guided by judicial decisions at the time of the misconduct.  See
Malone, 972 S.W.2d at 47.  In particular, we look to whether the
defendant had notice that substantial punitive damages were a potential
consequence of its misconduct.  See id.  We conclude that Wansey had
such notice.  At trial, Hole admitted into evidence a letter written by Wansey
to the State Bar of Texas, after the filing of Hole's lawsuit, complaining
about Hole's husband, a local attorney.  In his letter to the bar, Wansey
implied that Hole filed her lawsuit in Hidalgo County, Texas, because it is
known for "[s]ympathetic juries."  From this, we conclude that Wansey
was aware of the possibility of a significant damages award were a jury to find
him liable for his conduct.  This final guidepost therefore weighs against
excessiveness.

            The jury's award of exemplary damages comported
with federal due process requirements.  Wansey's conduct was reprehensible; the
amount of the exemplary damages was reasonably proportionate to the actual harm
suffered by Hole; and Wansey had adequate notice of his vulnerability to such
an award.  See Campbell, 538 U.S. at 418.  Wansey's eighth issue is
overruled.

V. 
Conclusion

 

            We affirm the judgment of the trial court
regarding the jury's findings of negligence, negligence damages, gross
negligence, and exemplary damages.  We reverse the judgment of the trial court
regarding the jury's findings of breach of contract, contract damages, and
attorneys' fees and render judgment dismissing Hole's breach of contract claim
with prejudice.

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the 

7th
day of April, 2011.









[1]
For purposes of our analysis, we have re-organized and re-numbered Wansey's
appellate issues.





[2]
Hole also sued Southern Cross Investments, Inc., Wansey's holding company, but
it is not a party to this appeal.





[3]
The jury charge contained no further instructions on the breach of contract
issue.





[4]
Having concluded that the evidence was legally insufficient, we need not reach
Wansey's argument that it is factually insufficient.  See Tex. R. App. P. 47.1.